UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., GEICO
INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY,
and GEICO CASULTY CO.,

       Plaintiffs,

v.                     Case No. 8:20-cv-2419-VMC-CPT

AFO IMAGING, INC. d/b/a
ADVANCED DIAGNOSTIC GROUP,
RADIOLOGY IMAGING
SPECIALISTS, LLC d/b/a
CAREFIRST IMAGING, KEVIN
JOHNSON, CHINTAN DESAI,
ROBERT D. MARTINEZ, and
STANLEY ZIMMELMAN,

       Defendants.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendants AFO Imaging, Inc. d/b/a Advanced Diagnostic Group, Kevin Johnson, Dr. Chintan Desai, Dr. Robert D. Martinez, and Dr. Stanley Zimmelman's (collectively, the "Advanced Diagnostic Defendants'") Motion to Dismiss (Doc. # 36), filed on January 4, 2021. Plaintiffs Government Employees Insurance Co., Geico Indemnity Co., Geico General Insurance Company, and GEICO Casualty Co. responded on January 19, 2021. (Doc. # 46). For the reasons set forth below, the Motion is denied.

1

I.   **Background**

Plaintiffs are motor vehicle insurers that have reimbursed Defendants for certain personal injury protection insurance ("PIP insurance") covered radiology procedures. (Doc. # 1 at ¶¶ 1, 9). Defendants are medical diagnostic centers and medical diagnostic center owners or directors. (Id. at ¶¶ 10-15). Advanced Diagnostic owns and operates multiple Florida diagnostic centers, with eight locations in Tampa, Brandon, Lakeland, Kissimmee, Orlando, and Palm Beach Gardens. (Id. at ¶ 10). During the relevant time periods, Plaintiffs allege that Kevin Johnson was the owner of Advanced Diagnostic. (Id. at ¶ 12). Dr. Chintan Desai is a radiologist who serves or served as the medical director of Advanced Diagnostic's Tampa, Brandon, and Orlando locations. (Id. at ¶¶ 11, 15). Dr. Robert Martinez is a physician who serves or served as the medical director of Advanced Diagnostic's Lakeland location. (Id. at ¶ 13). Dr. Stanley Zimmelman is a physician who serves or served as the medical director of four of Advanced Diagnostic's locations – in Tampa, Palm Beach Gardens, Kissimmee, and Orlando. (Id. at ¶ 14).

Plaintiffs aver that the Advanced Diagnostic Defendants entered into two related fraudulent schemes. First, Defendants allegedly submitted or caused to be submitted

thousands of PIP insurance charges for medically unnecessary, falsified radiology services, namely for magnetic resonance imaging ("MRIs"). (Id. at ¶¶ 1, 7). Second, the Advanced Diagnostic medical centers allegedly operated in violation of Florida law because their medical directors failed to properly perform their duties. (Id. at ¶¶ 120-38).

In the first alleged fraudulent scheme, Plaintiffs aver that the Advanced Diagnostic Defendants repeatedly billed them for medically unnecessary MRIS from at least 2015 to the present. (Doc. # 1 at ¶ 48). In support of this allegation, Plaintiffs provide a substantial number of examples of PIP-covered patients who were "involved in relatively minor, low-speed, low-impact 'fender-bender' accidents," and sustained only minor, soft tissue injuries – to the extent that they suffered any injuries at all. (Id. at ¶¶ 50-52, 53). These patients either did not seek treatment at a hospital following their accident or were discharged shortly thereafter without being admitted. (Id. at ¶ 51). Following these relatively minor accidents, the patients visited an Advanced Diagnostic clinic, where an employee performed an MRI as an initial diagnostic tool, despite the fact that "[i]n a legitimate clinical setting, MRIs should not be used as an initial form of diagnostic testing in the treatment of patients

3

complaining of soft tissue injuries such as sprains secondary to automobile accidents." (Id. at ¶¶ 55-58, 63). This is because most "soft tissue injuries such as sprains and strains will resolve over a period of weeks through conservative treatment, or no treatment at all." (Id. at ¶ 66).

Not only did a substantial number of patients involved in these minor accidents receive MRIs, but they also received substantially the same MRIs. (Id. at ¶ 70). The Advanced Diagnostic Defendants "routinely purported to perform and/or provide both cervical and lumbar MRIs with respect to [patients] who had not been seriously injured in their accidents, did not plausibly require both cervical and lumbar MRIs (or any MRIs), and in any case did not require cervical and lumbar MRIs as a first-line diagnostic test, before they had failed a legitimate course of conservative treatment." (Id. at ¶ 71). This is also despite the fact that these patients were different ages, heights, weights, were in different physical conditions and locations within the vehicle, and the locations of impact differed. (Id. at ¶¶ 73-78). Plaintiffs provide a number of representative examples. (Id. at ¶ 79). For instance:

> On June 28, 2017 two Insureds – JK and KG – were involved in the same automobile accident. JK and KG were different ages, in different physical

4

> condition, and experienced the impact from
> different positions in the vehicle. To the extent
> that they suffered any injuries at all in the
> accident, their injuries were different, and
> resolved at different rates. They did not require
> substantially identical MRIs on the same date as
> their accident. Even so, Advanced Diagnostic,
> Johnson, Zimmelman, and Desai submitted bills to
> GEICO for MRI scans purportedly performed on the
> cervical spine and lumbar spine of both JK and KG
> at AD-Kissimmee on June 28, 2017.
>
> * * *
>
> On March 29, 2019, two Insureds – BD and JD – were
> involved in the same automobile accident. BD and JD
> were different ages, in different physical
> condition, and experienced the impact from
> different positions in the vehicle. To the extent
> that they suffered any injuries at all in the
> accident, their injuries were different, and
> resolved at different rates. They did not require
> substantially identical MRIs on or about the same
> date after their accident. Even so, Advanced
> Diagnostic, Johnson, Martinez, and Desai submitted
> bills to GEICO for MRI scans purportedly performed
> on the cervical and lumbar spines of BD and JD at
> AD-Lakeland on April 18, 2019.

(Id.).

After performing these unnecessary MRIs, Plaintiffs

allege that the Advanced Diagnostic Defendants falsely

diagnosed these patients "in order to make it appear as if

the [patients] had suffered from serious injuries as the

result of their automobile accidents, when in fact they had

not." (Id. at ¶ 83). In support of this, Plaintiffs provide

a number of examples of Advanced Diagnostic patients who were

involved in these aforementioned minor automobile accidents, who did not visit a hospital or were discharged without being admitted, and were then diagnosed with serious disc bulges and "numerous herniations at multiple levels of their spines" at Advanced Diagnostic. (Id. at ¶ 84). The physicians made these diagnoses despite the fact that it is "improbable that a minor accident actually would cause a patient to suffer from numerous bulging discs at multiple levels of his or her spine," and that it is equally as unlikely that this would "occur over and over again within a large cohort of patients being treated within a small group of related radiology practices." (Id. at ¶¶ 94-95). For example:

> On July 19, 2018, an Insured named KM was involved in a minor automobile accident. In keeping with the fact that the accident was minor, KM was not seriously injured and was discharged from the hospital emergency room hours after arriving without being admitted to the hospital. To the extent that KM experienced any health issues at all as the result of the accident, they were minor soft tissue injuries that did not require MRIs, not disc herniations. Even so, after purportedly taking MRIs of KM's cervical spine and lumbar spine at AD-Lakeland on July 31, 2018, Advanced Diagnostic, Johnson, Martinez, and Desai falsely reported that KM had disc herniations at the C3-4 and L5-S1 levels of her spine.
>
> * * *
>
> On August 4, 2018, an Insured named EC was involved in a minor automobile accident. In keeping with the fact that the accident was minor, EC was not

6

> seriously injured and was discharged from the
> hospital emergency room hours after arriving
> without being admitted to the hospital. To the
> extent that EC experienced any health issues at all
> as the result of the accident, they were minor soft
> tissue injuries that did not require MRIs, not disc
> herniations. Even so, after purportedly taking MRIs
> of EC's cervical spine and lumbar spine at AD-
> Orlando 2 on September 6, 2018, Advanced
> Diagnostic, Johnson, Zimmelman, and Desai falsely
> reported that EC had disc herniations at the C3-4,
> C4-5, C6-7, L3-4, L4-5, and L5-S1 levels of her
> spine.

(Id. at ¶ 86).

Additionally, Plaintiffs allege that Dr. Desai, who worked remotely and was responsible for interpreting these MRIs, made these diagnoses without personally examining the patients, and without referencing those patients' medical records. (Id. at ¶¶ 103-04). Despite not referencing those materials, a number of Dr. Desai's reports indicated that these disc herniations and bulges were caused by the automobile accidents in question. (Id. at ¶¶ 105-06). And, Dr. Desai allegedly interpreted sixty to seventy MRIs per day that were then submitted to Plaintiffs, which Plaintiffs proffer indicates that they were not properly reviewed. (Id. at ¶¶ 110-14). Taking these allegations together, Plaintiffs posit that the Advanced Diagnostic Defendants exaggerated these diagnoses in order "to ensure a steady stream of referrals to [their clinics] for medically unnecessary MRIs."

(Id. at ¶ 88). Defendants were allegedly then enriched by this fraud by billing Plaintiffs for these MRIs – with Dr. Desai, Dr. Martinez, and Dr. Zimmelman as medical directors of the various clinics, and Johnson as the purported owner. (Id. at ¶¶ 2, 10-15, 139-40).

In the second related scheme, Plaintiffs allege that the Advanced Diagnostic clinics operated in violation the Florida Health Care Clinic Act's licensing requirements. (Doc. # 1 at ¶ 122). Under Florida law, when a clinic is not "wholly owned" by a licensed health care practitioner, it must "appoint a medical director or clinic director." (Id. at ¶¶ 35-39); Fla. Stat. § 400.9935(1) (2020). The Clinic Act requires these medical directors to accept legal responsibility for certain activities on behalf of the clinic, including the duty to "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful." Fla. Stat. § 400.9935(1)(g). "Upon discovery of an unlawful charge, the medical director . . . [must] take immediate corrective action." Id.

Plaintiffs aver that Johnson, who is not a licensed health care practitioner, operated the Advanced Diagnostic clinics without these requisite medical directors. (Doc. # 1 at ¶¶ 12, 122). Johnson allegedly did not recruit legitimate

8

physicians to serve in those posts so that he would be able "to use Advanced Diagnostic as a vehicle to submit a large amount of fraudulent PIP billing to GEICO and other Florida automobile insurers." (Id. at ¶ 123). Instead of recruiting physicians who would properly oversee Advanced Diagnostic's billing, Johnson employed Dr. Zimmelman, Dr. Martinez, and Dr. Desai "to falsely pose at the legitimate medical director[s]" of various clinic locations. (Id. at ¶¶ 124-27). Plaintiffs maintain that Dr. Desai, Dr. Martinez, and Dr. Zimmelman never performed their duties as clinic directors, instead ceding those oversight requirements to Johnson. (Id. at ¶ 129). Had these individuals properly served in their roles as medical directors, Plaintiffs posit that the purported directors would have uncovered the fraudulent billing of the unnecessary MRIs. (Id. at ¶ 131).

Plaintiffs filed this suit on October 16, 2020. (Doc. # 1). The complaint includes the following relevant causes of action: declaratory judgment under 28 U.S.C. §§ 2201 and 2202 against Advanced Diagnostic (Count I), violations of Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Johnson (Count II), violations of Section 1962(d) of RICO against Johnson, Dr. Desai, Dr. Martinez, and Dr. Zimmelman (Count III), violations of the

9

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against Advanced Diagnostic, Johnson, Dr. Desai, Dr. Martinez, and Dr. Zimmelman (Count IV), violations of Section 772.103(3) of the Florida RICO counterpart against Johnson (Count V), violations of Section 772.103(4) of the Florida RICO counterpart against Johnson, Dr. Desai, Dr. Martinez, and Dr. Zimmelman (Count VI), common law fraud against the Advanced Diagnostic Defendants (Count VII), and unjust enrichment against the Advanced Diagnostic Defendants (Count VIII).

The Advanced Diagnostic Defendants moved to dismiss the claims against them on January 4, 2021. (Doc. # 36). Plaintiffs have responded (Doc. # 46), and the Motion is now ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of

Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).

But,

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(quotations and citations omitted). Courts are not "bound to

accept as true a legal conclusion couched as a factual

allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The

Court must limit its consideration to "well-pleaded factual

allegations, documents central to or referenced in the

complaint, and matters judicially noticed." La Grasta v.

First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

The Federal Rules of Civil Procedure accord a heightened

pleading standard to claims for fraud, requiring that they be

pled with particularity. Fed. R. Civ. P. 9(b). Under Rule

9(b), the "plaintiff must allege: (1) the precise statements,

documents, or misrepresentations made; (2) the time, place,

and person responsible for the statement; (3) the content and

manner in which these statements misled the [p]laintiffs; and

(4) what the defendants gained by the alleged fraud." Am.

Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

This "requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

## III. **Analysis**

The Advanced Diagnostic Defendants move to dismiss all claims against them, arguing that (1) the complaint is an impermissible shotgun pleading, and that (2) it fails to state a claim under Rule 9(b) and Rule 12(b)(6). (Doc. # 36). The Court will address each argument as to all counts in turn.

### A. **Shotgun Pleading**

First, Defendants argue that the complaint should be dismissed as a shotgun pleading because it: (1) "impermissibly incorporates, as though fully set forth therein, each and every allegation in paragraphs 1-149 for all thirteen counts"; (2) "brings Counts 3, 4, 6, 7, and 8 against multiple [Advanced Diagnostic Defendants] without

12

specifying what conduct each Defendant allegedly contributed to the cause"; and (3) "due to its length – 94 pages, 244 paragraphs, and 13 counts – the pleading cannot be considered a short and plain statement of the claims showing that [Plaintiffs are] entitled to relief." (Doc. # 36 at 7-10) (internal quotation marks and citations omitted).

"A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer." Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1126-27 (11th Cir. 2014) (footnotes omitted). The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or

which of the defendants the claim is brought against." <u>Weiland</u>
<u>v. Palm Beach Cnty. Sheriff's Off.</u>, 792 F.3d 1313, 1322-23
(11th Cir. 2015). "The unifying characteristic of all types
of shotgun pleadings is that they fail to . . . give the
defendants adequate notice of the claims against them and the
grounds upon which each claim rests." <u>Id.</u> at 1323.

Here, the Advanced Diagnostic Defendants argue that the
complaint falls within the first and fourth categories
identified in <u>Weiland</u>. (Doc. # 36 at 8-10). Regarding the
first category, the Advanced Diagnostic Defendants argue that
each count impermissibly incorporates every allegation in
paragraphs 1 through 149 of the complaint. (<u>Id.</u> at 8).
However, this does not make the complaint a shotgun pleading,
as the complaint realleges only the facts in the body of the
complaint, not those in the preceding counts. See <u>Barmapov v.</u>
<u>Amuial</u>, 986 F.3d 1321, 1321-22 (11th Cir. Feb. 3, 2021)
("Barmapov's second amended complaint does not fall into the
first category because although nine of the [nineteen] counts
incorporate almost every factual allegation in the complaint,
none of them adopts the allegations in the preceding
counts.").

Regarding the fourth category, the Advanced Diagnostic
Defendants argue that the complaint impermissibly lumps the

action of multiple defendants together. (Doc. # 36 at 8-9).
However, the Court finds that the complaint includes
sufficient factual allegations as to each Advanced Diagnostic
Defendant to place them on notice of the allegations against
them. See Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d
1124, 1140 (M.D. Fla. 2018) ("Other courts have also reached
this nuanced distinction by approving claims lodged against
multiple defendants where the activities undertaken by each
defendant were alleged."). The complaint explains the role of
each of the Advanced Diagnostic Defendants, in that Dr. Desai
evaluated the MRIs, created patient reports on behalf of
Advanced Diagnostic, and purportedly served as medical
director for three Advanced Diagnostic locations, which would
require him to oversee those locations' PIP insurance
billing. (Doc. # 1 at ¶¶ 15, 100). Dr. Martinez and Dr.
Zimmelman purportedly served as medical directors for five of
Advanced Diagnostic's locations, such that they also would
have overseen those locations' insurance billing. (Id. at ¶¶
13-14). And, Johnson, as the purported owner of all of
Advanced Diagnostic's clinics, allegedly oversaw the entire
corporation and operated the clinics, which he utilized "as
a vehicle to submit a massive amount of fraudulent PIP billing
to GEICO." (Id. at ¶¶ 133-34).

This therefore does not constitute a shotgun pleading under the fourth category identified in <u>Weiland</u>. <u>See</u> <u>FFC Mortg. Corp. v. Red Door Title Ins. Agency, Inc.</u>, No. 13-61132-Civ-SCOLA, 2013 WL 12138556, at *3 (S.D. Fla. Dec. 12, 2013) ("These are specific acts that are connected to specific Defendants. The Court therefore finds that FFC has not simply lumped the Defendants together but has provided the specific acts attributable to Pollack and Martinez to give sufficient notice of the allegations of fraud against them.").

And, the Court disagrees with the argument that the complaint is so long that is constitutes a shotgun pleading. (Doc. # 36 at 10). Although the Court appreciates that the complaint is ninety-four pages and 244 paragraphs long, this is a complex civil conspiracy case, and the length does not make it so that Defendants are unable to prepare a proper response. <u>See</u> <u>Bailey v. Janssen Pharmaceutica, Inc.</u>, 288 F. App'x 597, 603 (11th Cir. 2008) ("Moreover, a complaint – so long as it is minimally sufficient to put a defendant on notice of the claims against him – will not fail for mere surplusage."); <u>Snow v. Etowah Cnty. Sheriff's Dep't</u>, No. 4:20-cv-00344-ACA, 2020 WL 6899168, at *4 (N.D. Ala. Nov. 24, 2020) ("Length alone does not make a shotgun pleading[.]").

Accordingly, the Court declines to dismiss the complaint

as a shotgun pleading. See Lenz v. Michaels Org., LLC, No.
8:19-cv-2950-TPB-AEP, 2020 WL 6119376, at *3 (M.D. Fla. Oct.
16, 2020) ("Although the complaint is unnecessarily lengthy,
and incorporates all prior factual allegations, the Court
finds that the complaint is sufficient to give Defendants
notice of the claims against them. Additionally, each
Plaintiff is not required to separately plead a distinct claim
against each Defendant.").

### B. **RICO and Related State Law Claims**

Next, the Advanced Diagnostic Defendants argue that
Counts II, III, V, and VI should be dismissed for failure to
state a claim under the federal and Florida RICO statutes
because the complaint: (1) fails to plead the predicate acts
with particularity; (2) fails to establish the existence of
an enterprise; and (3) lacks any particularized allegations
of a conspiracy. (Doc. # 36 at 16-19).

Counts II and V allege violations of Section 1962(c) of
the federal RICO statute and its Florida counterpart against
Johnson. (Doc. # 1 at ¶¶ 156-63, 181-87). Counts III and VI
allege violations of Section 1962(d) of the federal RICO
statute and its Florida counterpart against Johnson, Dr.
Desai, Dr. Martinez, and Dr. Zimmelman. (Id. at ¶¶ 164-71,
188-95). Because the Florida counterparts mirror the federal

RICO statute, the Court will discuss the federal and state claims in conjunction. See Jackson, 372 F.3d at 1263 ("[T]he analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims.").

### 1. **Section 1962(c) and Related Florida Claim**

The federal RICO statute "was enacted in 1970 and prohibits racketeering activity connected to interstate commerce." Cisneros v. Petland, Inc., 972 F.3d 1204, 1210 (11th Cir. 2020) (citing Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348 (11th Cir. 2016)). The statute reaches beyond organized crime and should "be liberally construed to effectuate its remedial purposes." Boyle v. United States, 556 U.S. 938, 944 (2009) (citation omitted). Section 1962(c) of the statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

To state a claim under RICO, Plaintiffs must plausibly allege that Johnson: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity

18

that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." Cisneros, 972 F.3d at 1211. Here, the alleged predicate acts are violations of Section 1341 of the federal mail fraud statute. (Doc. # 1 at ¶ 158). Because Plaintiffs' RICO claims are wholly based on the predicate acts of mail fraud, their substantive RICO allegations must comply with Rule 9(b)'s heightened pleading standard. American Dental, 605 F.3d at 1291.

The Advanced Diagnostic Defendants allege that Plaintiffs have failed to adequately plead the second and fourth elements of their Section 1962(c) claim – that Johnson engaged in an (2) enterprise pertaining to (4) racketeering activity that included at least two predicate acts of racketeering. (Doc. # 36 at 16-19).

### a. **Enterprise**

Under the federal RICO statute, an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Here, Plaintiffs are not alleging that the enterprise is an association in fact, but a corporation

– Advanced Diagnostic, Inc.[1] (Doc. # 1 at ¶ 157). Plaintiffs
allege that Johnson – as owner of Advanced Diagnostic –
operates diagnostic centers that he utilized to "submit[]
thousands of fraudulent charges on a continuous basis for
over three years seeking payments that Advanced Diagnostic
was not eligible to receive" under the Florida PIP statute.
(Doc. # 1 at ¶¶ 156-58). The complaint further alleges that
enterprise "engaged in inherently unlawful acts, inasmuch as
it continues to submit and attempt collection on fraudulent

1. The Advanced Diagnostic Defendants discuss at length
whether Plaintiffs meet their burden of alleging an
enterprise as an "association in fact," but that test is
irrelevant given that all individuals alleged to be involved
in the scheme purportedly own, serve as medical directors of,
or provide radiology services as employees of the corporate
enterprise. (Doc. # 36 at 17-19).  The corporation itself –
Advanced Diagnostic, Inc. – is not named as a defendant in
any of the RICO counts, and so Defendants are sufficiently
distinct from the enterprise. (Doc. # 1 at ¶¶ 156, 181); see
Roche Diagnostics Corp. v. Priority Healthcare Corp., 407 F.
Supp. 3d 1216, 1239 (N.D. Ala. 2019) ("Clearly distinguishing
the persons and the enterprise involved here, Roche alleges
the exact type of unlawful behavior described in Kushner and
Ray. The Amended Complaint asserts that Ms. Minga – through
PHC, which she co-founded with Ms. Carson – acquired
legitimate, pre-existing pharmacies and helped create false-
front pharmacies to conduct her scheme of submitting false
test strips for adjudication; Mr. Carson, meanwhile,
allegedly helped Ms. Minga operate Priority Care with his
pharmacy business knowledge. . . . The entire enterprise,
then allegedly constituted a funnel through which she could
channel unlawful activities, with the help of Mr. Carson and
others. The court finds that Roche adequately differentiates
between the persons and the enterprise, as required by Ray.").

billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Advanced Diagnostic in pursuit of inherently unlawful goals – namely, the theft of money from GEICO . . . through fraudulent no-fault billing." (Id. at ¶ 161).

This is sufficient to plead the existence of an enterprise in the form of a corporation under the RICO statute. See Fernandez de Cordoba v. Flores, No. 17-20122-CV-WILLIAMS/TORRES, 2018 WL 1830805, at *3 (S.D. Fla. Jan. 10, 2018) ("Such an enterprise has been adequately pled here; the Complaint states that Gold Lion is a limited liability company organized and existing under the laws of the United Kingdom created for the purpose of perpetrating the fraud and scheme upon Plancarte and possibly others. The Complaint also states clearly that Flores worked on behalf of Gold Lion in an effort to induce Plaintiffs to deposit money into accounts controlled by the Defendants." (citations omitted)), report and recommendation adopted, No. 17-20122-CIV-WILLIAMS, 2018 WL 1811945 (S.D. Fla. Feb. 9, 2018).

### b. **Predicate Acts**

Next, the Advanced Diagnostic Defendants argue that Plaintiffs have not alleged the predicate acts – mail fraud – with the particularity required by Rule 9(b). (Doc. # 36 at

21

16). The elements of mail fraud include: "(1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme." United States v. Lander, 668 F.3d 1289, 1297 (11th Cir. 2012) (citation omitted). "The gravamen of the offense is the scheme to defraud, and any 'mailing . . . incident to an essential part of the scheme satisfies the mailing element,' even if the mailing 'contain[s] no false information.'" Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639, 647 (2008) (quoting Schmuck v. United States, 489 U.S. 705, 712 (1989)).

As noted, because Plaintiffs' RICO claims are based upon mail fraud, they must comply with Rule 9(b)'s heightened pleading standard. Drummond v. Zimmerman, 454 F. Supp. 3d 1210, 1218 (S.D. Fla. 2020). Under Rule 9(b), the plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." American Dental, 605 F.3d at 1291 (citation omitted). "The plaintiff must allege facts with respect to each defendant's participation in the fraud." Weaver v. Nat'l Better Living Ass'n, Inc., No.

4:13-CV-2112-VEH, 2014 WL 12614481, at *19 (N.D. Ala. July 3, 2014) (citing Brooks, 116 F.3d at 1381).

Here, Plaintiffs provide a number of examples of allegedly fraudulent bills and corresponding mailings submitted to GEICO, which the complaint alleges were submitted "in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers." (Doc. # 1 at ¶ 161). In the complaint, Plaintiffs provide numerous examples of bills for allegedly fraudulent and medically unnecessary MRIs that were submitted to Plaintiffs from 2015 to 2019. (Id. at ¶ 79). And, attached to the complaint, Plaintiffs include a chart of over 3,100 allegedly fraudulent claims mailed to GEICO from August 2014 to February 2020. (Doc. # 1-1). These include the location of the services, the claim number, the date of the accident, the date of the mailing, and the billed charges. (Id.). This, in conjunction with the detailed examples, which include the persons who performed and billed for these purportedly fraudulent MRIs, as well as the complaint's explanations of each individual's role in the scheme, why the scheme is fraudulent, and how these claims were submitted to Plaintiffs, is sufficient under Rule 9(b). See Drummond Co. v. Collingsworth, No. 2:15-cv-506-RDP, 2016 WL 9980721, at *6 (N.D. Ala. Mar. 8, 2016)

23

("The Complaint lays out in detail the purpose and effect of the payments as to each witness, the genesis of those payments, who was responsible for facilitating and/or aware of the payments, and the specific circumstances of how each payment was made (including date of transfer, payor, payee, and means of sending the transfer). As such, contrary to Defendants' contention, Plaintiffs have pled their claims with Rule 9(b) particularity[.]" (citations omitted)). Thus, Plaintiffs have sufficiently alleged the predicate mail fraud, and the Motion is denied as to Counts II and V.

### 2. **Section 1962(d) and Related Florida Claim**

The Advanced Diagnostic Defendants also argue that Plaintiffs have failed to adequately plead their Section 1962(d) RICO and related state claims – Counts III and VI – which were filed against Johnson, Dr. Desai, Dr. Martinez, and Dr. Zimmelman. (Doc. # 36 at 16-21). The Advanced Diagnostic Defendants posit that Counts III and VI should be dismissed because: (1) Plaintiffs' underlying RICO cause of action is not sufficiently pled; (2) the complaint includes "no particularized allegation of an agreement between any Defendants . . . to violate RICO"; and (3) the complaint features "nothing more than allegations of parallel conduct." (Id. at 19-21).

Section 1962(d) of the federal RICO statute "makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including [Section] 1962(c)." American Dental, 605 F.3d at 1293 (citation omitted). "The essence of a RICO conspiracy claim is that each defendant has agreed to participate in the conduct of an enterprise's illegal activities." Solomon v. Blue Cross & Blue Shield Ass'n, 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008) (citation and emphasis omitted). "A plaintiff can state a RICO conspiracy claim by showing defendants: (1) agreed to the overall objective of the conspiracy; or (2) agreed to commit two predicate acts." Cardenas v. Toyota Motor Corp., 418 F. Supp. 3d 1090, 1102 (S.D. Fla. 2019). However, an agreement "need not be established by direct evidence"; "it may be inferred from the conduct of the participants." Id. at 1103; see also Cisneros, 972 F.3d at 1220 ("A RICO conspiracy can be found through 'the conduct of the alleged participants or from circumstantial evidence of a scheme.'" (quoting United States v. Browne, 505 F.3d 1229, 1264 (11th Cir. 2007))).

Notably, "[u]nlike racketeering claims predicated on fraud under Section 1962(c), conspiracy claims under Section 1962(d) only need to satisfy Rule 8 pleading requirements." Cardenas, 418 F. Supp. 3d at 1103. "However, conclusory

25

allegations, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy." Blevins v. Aksut, No. 15-00120-CG-B, 2017 WL 10410658, at *11 (S.D. Ala. Oct. 27, 2017) (citation omitted).

As previously discussed, Plaintiffs have adequately pled their underlying RICO claims to survive a motion to dismiss. Therefore, the Court turns to the Advanced Diagnostic Defendants' second argument – that Plaintiffs have not sufficiently pled the existence of a conspiracy. (Doc. # 36 at 19-20). In Count III, Plaintiffs allege that Johnson, Dr. Desai, Dr. Martinez, and Dr. Zimmelman "knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO." (Doc. # 1 at ¶ 169). In the body of the complaint, Plaintiffs also provide extensive examples of these allegedly fraudulently submitted bills for MRIs. (Id. at ¶¶ 68, 79, 86, 100, 107). According to the complaint, during the relevant periods, Johnson was the owner of Advanced Diagnostic, and Dr. Zimmelman, Dr. Martinez, and Dr. Desai were medical directors of its various clinics, such that they would be responsible for ensuring accurate billing. (Id. at ¶¶ 12-15). This, along with the multitude of similar

26

serious diagnoses by Dr. Desai for apparently relatively minor injuries, is sufficient to raise a reasonable inference of a conspiracy to submit fraudulent bills for unnecessary MRIs to Plaintiffs. See Bradley v. Franklin Collection Serv., Inc., No. 5:10-cv-01537-AKK, 2011 WL 13134961, at *9 (N.D. Ala. Mar. 24, 2011) ("From these allegations, the court infers that the [defendants] may have agreed to participate in the racketeering activity. Whether plaintiffs can ultimately prevail on this claim is an issue that is not determinative at this juncture. Rather, the relevant inquiry here is simply whether plaintiffs have pled a plausible claim. As it relates to [Section] 1962(c), the answer is yes. Accordingly, the motion is denied as to the claim that defendant conspired to violation [Section] 1962(c) in violation of [Section] 1962(d).").

And at this stage, the Court disagrees with the contention that the complaint alleges nothing more than parallel conduct. (Doc. # 36 at 20). Accordingly, the Court declines to dismiss Counts III and VI for these reasons.

### C. FDUTPA

Next, the Advanced Diagnostic Defendants move to dismiss Count IV, Plaintiffs' FDUTPA claim against all Advanced Diagnostic Defendants. (Doc. # 36 at 21). Defendants argue

27

that Count IV should be dismissed because Plaintiffs have failed to particularly allege their claim. (Id. at 21-22).

To state a claim under FDUTPA, a plaintiff must sufficiently allege the following elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting City First Mortg. Corp. v. Barton, 988 So.2d 82, 86 (Fla. 4th DCA 2008)). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006)).

When a FDUTPA claim is predicated upon fraudulent conduct, the allegations must satisfy Rule 9(b)'s heightened pleading standard. See Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC, No. 8:20-cv-604-VMC-JSS, 2020 WL 5350303, at *3 (M.D. Fla. Sept. 4, 2020) ("The trend has been for courts to apply the Rule 9(b) standard when FDUTPA claims sound in fraud."). To allege a deceptive or unfair practice under Rule 9(b), the plaintiff must "state with particularity

28

the circumstances constituting fraud" by "identify[ing] the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud." Weiss v. Gen. Motors LLC, 418 F. Supp. 3d 1173, 1178-79 (S.D. Fla. 2019).

However, "[t]he particularity requirement may be relaxed for allegations of 'prolonged multi-act schemes.'" Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 662 (11th Cir. 2015) (citing United States ex rel. Clausen v. Lab'y Corp. of Am., Inc., 290 F.3d 1301, 1314 n.25 (11th Cir. 2002)). This more "relaxed standard permits a plaintiff to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud." Id. at 663. "Even under the relaxed requirement, however, a plaintiff is still required to allege at least some particular examples of fraudulent conduct to lay a foundation for the rest of the allegations of fraud." Id.

Here, Plaintiffs' FDUTPA claim sounds in fraud, and Rule 9(b) therefore applies. See (Doc. # 1 at ¶ 176) ("The bills and supporting documents submitted or caused to be submitted by Advanced Diagnostic, Johnson, Desai, Martinez, and

29

Zimmelman to GEICO were fraudulent[.]"). As previously noted, Plaintiffs provide a significant number of particular examples of these allegedly fraudulent bills. (Id. at ¶¶ 68, 79, 86, 100, 107, 114). These examples specify the alleged misrepresentations, when they were made, and who was responsible for the misrepresentations. (Id.). Additionally, the complaint adequately explains how these fraudulent bills misled Plaintiffs, and what the Advanced Diagnostic Defendants gained through the scheme. (Id. at ¶¶ 49-67, 83-84, 106, 122-28, 139-40). These numerous representative examples are sufficient to survive a motion to dismiss, even given the fact that this scheme allegedly occurred over a number of years. See ADT LLC v. NorthStar Alarm Servs. LLC, No. 9:18-80283-CV-DIMITROULEAS, 2018 WL 6504398, at *2 (S.D. Fla. Sept. 19, 2018) ("Further, at the pleading stage, these allegations of the ten specific instances of the alleged fraudulent conduct are sufficient to support the allegation of an overall fraudulent scheme.").

Accordingly, Plaintiffs have sufficiently alleged a deceptive or unfair practice under FDUTPA. See Gov't Emps. Ins. Co. v. Clear Vision Windshield Repair, L.L.C., No. 6:16-cv-2077-JA-TBS, 2017 WL 1196438, at *3 (M.D. Fla. Mar. 29, 2017) ("Defendants argue that Plaintiffs fails to

30

sufficiently plead their fraud-based claims – RICO, FDUTPA, FCRCPA, and common law fraud – with sufficient particularity under Rule 9(b). But in the Complaint, Plaintiffs identify the creators of the false insurance claims and described in detail numerous examples of the fraudulent actions. Plaintiffs further provide as exhibits to the Complaint an extensive sampling of fraudulent billing[.] . . . The exhibits list over [2,000] samples of fraudulent billing. Defendants' agents are not identified by name, but their relationship to Defendants is described in detail as is the time frame during which the fraudulent conduct took place. Plaintiffs' submissions, taken together, meet the purpose of Rule 9(b) to give Defendants fair notice of fraud."). Therefore, the Court declines to dismiss Count IV for failure to plead with the requisite particularity.

**D. <u>Common Law Fraud</u>**

Next, the Advanced Diagnostic Defendants move to dismiss Count VII, Plaintiffs' claim for common law fraud, again alleging that the fraud has not been pled with particularity under Rule 9(b). (Doc. # 36 at 22-23). Because the Court has already held that the complaint adequately alleges the fraudulent scheme in question, the Court declines to dismiss Count VII for this reason.

### E. Unjust Enrichment

Next, the Advanced Diagnostic Defendants move to dismiss Count VIII, Plaintiffs' claim for unjust enrichment because: (1) it has not been pled with the particularity required by Rule 9(b); (2) the equities are against Plaintiffs; and (3) the complaint does not adequately plead facts establishing that no adequate legal remedy exists. (Doc. # 36 at 23-24). Because the Court has already found that the complaint is pled with particularity, it turns to the Advanced Diagnostic Defendants' latter two arguments.

To state a claim for unjust enrichment under Florida law, the plaintiff must sufficiently allege the following elements: "(1) [the] plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) [the] defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." Muy v. Int'l Bus. Machs. Corp., No. 4:19-cv-14-MW/CAS, 2019 WL 8161745, at *1 (N.D. Fla. July 19, 2019) (quoting Agritrade, LP v. Quercia, 253 So.3d 28, 33 (Fla. 3d DCA 2017)).

"The general rule that equitable remedies are not available under Florida law when adequate legal remedies

32

exist . . . does not apply to unjust enrichment claims. <u>In re</u> <u>Monat Hair Care Prods. Mktg., Sales Pracs., & Prods. Liab.</u> <u>Litig.</u>, No. 18-MD-02841-GAYLES, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019) (citation omitted). "Rather, it is only upon a showing that an express contract exists between the parties that the unjust enrichment . . . count fails." <u>Harris</u> <u>v. Nordyne, LLC</u>, No. 14-CIV-21884-BLOOM/Valle, 2014 WL 12516076, at *7 (S.D. Fla. Nov. 14, 2014). When "a plaintiff has adequate legal remedies under theories of liability other than a claim for breach of an express contract, those remedies do not bar an unjust enrichment claim." <u>Id.</u> (citation omitted).

Here, Plaintiffs allege that they conferred a benefit by paying the fraudulent bills submitted by the Advanced Diagnostic Defendants, who were enriched by those payments. (Doc. # 1 at ¶¶ 204-05). Plaintiffs maintain that the Advanced Diagnostic Defendants' retention of these payments "violates fundamental principles of justice, equity, and good conscience," given the unlawful scheme. (<u>Id.</u> at ¶¶ 203-07). This, combined with the facts alleged in the complaint, is sufficient. Indeed, "Florida courts have long recognized a cause of action for unjust enrichment to prevent the wrongful retention of a benefit, or the retention of money or property

33

of another, in violation of good conscience and fundamental principles of justice or equity." Allstate Ins. Co. v. Vizcay, 826 F.3d 1326, 1330 (11th Cir. 2016) (quoting State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013)).

As to the argument that the complaint fails to plead facts establishing that no adequate remedy at law exists, Plaintiffs argue that they may plead this claim in the alternative. (Doc. # 46 at 20). The Court agrees. See Adelphia Cable Partners, Inc. v. E & A Beepers Corp., 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief."). And, no party has shown that an express contract exists that would bar a claim for unjust enrichment, nor do Plaintiffs allege a breach of any contract. See Harris, 2014 WL 12516076, at *8 ("At best, Defendant's argument is premature, and cannot result in dismissal at this juncture."); see also James D. Hinson Elec. Contracting Co. v. Bellsouth Telecomms., Inc., No. 3:07-cv-598-TJC-MCR, 2008 WL 360803, at *4 (M.D. Fla. Feb. 8, 2008) ("While Hinson's unjust enrichment and money had and received claims do seek essentially the same relief as the fraud and FDUTPA claims,

34

the Court sees no reason why Hinson should not be allowed to plead in the alternative."). Accordingly, the Motion is denied as to this requested relief.

**F. Declaratory Relief**

Finally, the Advanced Diagnostic Defendants move to dismiss Count I, Plaintiffs' claim for declaratory relief, arguing that Plaintiffs have failed to allege their fraud claims with particularity. (Doc. # 36 at 24-25). Because the Court has already found that Plaintiffs' fraud claims have been adequately pled, the Court declines to dismiss Count I for this reason.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   The Advanced Diagnostic Defendants' Motion to Dismiss (Doc. # 36) is **DENIED.**

(2)   The Advanced Diagnostic Defendants' answer to the complaint is due by **March 11, 2021.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>25th</u> day of February, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE