UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY
CO.,

                                                  CASE NO.: 8:20-cv-02419-VMC-CPT

        Plaintiffs,

vs.

AFO IMAGING, INC. d/b/a ADVANCED
DIAGNOSTIC GROUP, RADIOLOGY IMAGING
SPECIALISTS, LLC d/b/a CAREFIRST
IMAGING, KEVIN JOHNSON, CHINTAN DESAI,
M.D., ROBERT D. MARTINEZ, M.D., and
STANLEY ZIMMELMAN, M.D.,

        Defendants.

_____/

**PLAINTIFFS' MOTION AND SUPPORTING MEMORANDUM TO DISMISS DEFENDANT
AFO IMAGING, INC. d/b/a ADVANCED DIAGNOSTIC GROUP'S COUNTERCLAIMS**

Plaintiffs, Government Employees Insurance Company, GEICO Indemnity

Company, GEICO General Insurance Company, and GEICO Casualty Company

(collectively, "GEICO" or "Plaintiffs"), move to dismiss Defendant AFO Imaging, Inc.

d/b/a Advanced Diagnostic Group's ("Advanced Diagnostic") First and Second

Counterclaims (the "Counterclaims") pursuant to Fed. R. Civ. P. 12(b)(6). See ECF No.

51.

The grounds and authority for this motion are set forth in the following

supporting memorandum.  The memorandum is incorporated as part of this motion.

## MEMORANDUM

GEICO respectfully submits the following memorandum in support of its motion to dismiss Advanced Diagnostic's First and Second Counterclaims.

## SUMMARY

GEICO's Complaint in this action alleges – in substance – that Advanced Diagnostic and its co-Defendants submitted a large amount of fraudulent and unlawful no-fault ("personal injury protection" or "PIP") insurance billing to GEICO for purported magnetic resonance imaging studies ("MRIs"), and that GEICO was damaged by its payments on those PIP charges. See ECF No. 1, passim.  Based on these allegations, GEICO asserts claims against Advanced Diagnostic and its co-Defendants for, variously, civil RICO violations under 18 U.S.C. § 1962(c) and (d), violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA"), common law fraud, and unjust enrichment. See ECF No. 1, ¶¶ 150, et seq. Through these claims, GEICO seeks – among other things – to recover more than $21,200,000.00 that it already has paid in reliance on the fraudulent billing that the Defendants submitted through Advanced Diagnostic. Id. In addition, GEICO seeks a declaratory judgment to the effect that it is not liable to pay any of Advanced Diagnostic's outstanding and unpaid billing, because of the fraudulent and unlawful activity alleged in the Complaint. Id.

Against this backdrop, Advanced Diagnostic has asserted defective defamation and tortious interference Counterclaims.  See ECF No. 51. As discussed herein, the Counterclaims should be dismissed.

BACKGROUND

I.     GEICO's Complaint

GEICO commenced this action on October 16, 2020.  See ECF No. 1.  GEICO respectfully refers the Court to the Complaint for the full contours of Advanced Diagnostic and its co-Defendants' interrelated fraudulent schemes. Briefly, however, GEICO alleges – among other things – that Advanced Diagnostic and its associates, including Defendants Kevin Johnson ("Johnson"), Chintan Desai, M.D. ("Desai"), Robert D. Martinez, M.D. ("Martinez"), and Stanley Zimmelman, M.D. ("Zimmelman")(collectively the "Advanced Diagnostic Defendants"), used several Florida health care clinics as vehicles submit a large amount of fraudulent and unlawful PIP billing to GEICO for medically unnecessary, illusory, and non-reimbursable MRI services. See ECF No. 1, passim.  Relatedly, GEICO alleges that Defendants Desai, Martinez, and Zimmelman never legitimately served as medical directors at the respective Advanced Diagnostic health care clinics because, had they done so, they would have observed and put an end to the fraud and unlawful activity. See ECF No. 1, ¶¶ 120-134, and passim. By extension, GEICO alleges that the PIP billing the Advanced Diagnostic Defendants submitted through Advanced Diagnostic to GEICO falsely represented that the services billed through Advanced Diagnostic were lawfully

3

provided, that Advanced Diagnostic was in compliance with Florida Health Care Clinic Act's (the "Clinic Act")[1] licensing and operating requirements, and that Advanced Diagnostic was entitled to reimbursement on the PIP charges, when in fact it was not. Id.

## II.   The Advanced Diagnostic Defendants' Motion to Dismiss

On January 4, 2021, the Advanced Diagnostic Defendants moved to dismiss GEICO's Complaint.   See ECF No. 36.   In their motion to dismiss, the Advanced Diagnostic Defendants argued – among other things – that GEICO's highly-particularized fraud and racketeering claims were somehow vague, indefinite, implausible, and otherwise defective. See id., passim. GEICO opposed the Advanced Diagnostic Defendants' motion to dismiss. See ECF No. 46.  The Court then denied the Advanced Diagnostic Defendants' motion to dismiss.  See ECF No. 50.

## III.   The Advanced Diagnostic Defendants' Answer and Counterclaims

On March 11, 2021, the Advanced Diagnostic Defendants responded to GEICO's Complaint by filing their Answer and Counterclaims.  See ECF No. 51.  In their Answer, the Advanced Diagnostic Defendants generally deny the substantive allegations in the Complaint.  In addition, the Advanced Diagnostic Defendants raise various affirmative defenses in their Answer.  See ECF No. 51, pp. 31-32.

In their Counterclaims, the Advanced Diagnostic Defendants allege – in substance – that:

---

[1] See Fla. Stat. § 400.990 et seq.

(i)     GEICO supposedly has a "pattern and practice" of wrongfully denying PIP claims, and Advanced Diagnostic has filed collections lawsuits against GEICO in Florida county courts, seeking to collect on some of the PIP claims that GEICO denied. See ECF No. 51, pp. 35-36.[2]

(ii)    Though GEICO contends that Advanced Diagnostic is not entitled to recover on any of its outstanding billing because of the fraudulent and unlawful activity described in the Complaint, GEICO has settled some of Advanced Diagnostic's county court PIP collections lawsuits in the months since it commenced this action. See ECF No. 51, pp. 39-40.

(iii)   On 198 occasions when GEICO denied Advanced Diagnostic's PIP claims for MRIs that Advanced Diagnostic supposedly provided to GEICO

---

[2] Advanced Diagnostic attempts to buttress its Counterclaims with allegations to the effect that, in other, totally unrelated cases over the years, GEICO either was alleged to have improperly denied insurance claims, alleged to have improperly failed to settle insurance claims, or itself has alleged that health care providers/defendants have engaged in fraudulent and unlawful conduct. See ECF No. 51, pp. 36-39. GEICO respectfully submits that Advanced Diagnostic's tendentious summaries of these unrelated cases have no actual bearing on the claims, counterclaims, or defenses in the present case, and certainly do not make Advanced Diagnostic's otherwise defective Counterclaims viable or plausible. In this context – and though Advanced Diagnostic notably fails to mention it – federal courts in Florida and elsewhere not only have found GEICO's anti-fraud lawsuits and claims to be legally sufficient, but also have granted GEICO judgments on its PIP fraud claims. See, e.g., Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care Inc., 2019 U.S. Dist. LEXIS 220674 (S.D. Fla. 2019)(granting GEICO summary judgment on fraud, unjust enrichment, FDUTPA, and declaratory judgment claims against health care clinic and other members of alleged PIP insurance fraud ring); Gov't Emples. Ins. Co. v. KJ Chiropractic Center LLC, M.D. Fla. Case No. 6:12-cv-01138-PGB-DCI, at ECF No. 495 (granting GEICO summary judgment on RICO, fraud, FDUTPA, and unjust enrichment claims against participants in alleged PIP insurance fraud ring); Government Employees Insurance Co. et al. v. DG Esthetic and Therapy Center, Inc. et al., S.D. Fla. Case No. 1:18-cv-20921-CMA, at Docket No. 29 (denying motion to dismiss GEICO's PIP fraud and racketeering claims against allegedly fraudulent health care clinic and its associates); Gov't Emples. Ins. Co. v. Alternative Med. Ctr. of Fla., 2017 U.S. Dist. LEXIS 231394 (S.D. Fla. 2017)(denying motion to dismiss GEICO's PIP fraud and racketeering claims against allegedly fraudulent health care clinic and its associates).

insureds ("Insureds"), GEICO sent Explanations of Benefits ("EOBs") – <u>to its own Insureds</u> – which stated that "[t]his claim is denied because the provider [<u>e.g.</u>, Advanced Diagnostic] is not in compliance with the licensing and operating requirements of the Florida Health Care Clinic Act, Fla. Stat. 400.990, et seq." <u>See</u> ECF No. 51, pp. 40-41. The Advanced Diagnostic Defendants claim that this statement within the EOBs was false, because the Advanced Diagnostic clinic locations were properly licensed pursuant to the Clinic Act, and have "consistently" received licensing certificates from the Florida Agency for Health Care Administration ("AHCA"), which licenses Florida health care clinics. <u>Id</u>.[3]

---

[3] Advanced Diagnostic contends that "GEICO knows or should know that the statements in the EOBs are false because it has continued to make payments under the PIP laws for GEICO patients who seek treatment at AFO clinics as recently as January 15, 2021." <u>See</u> ECF No. 51, p. 41. However, Florida's PIP insurance law <u>explicitly</u> permits plaintiff-insurers to challenge fraudulent or unlawful PIP claims at any time, even after they are paid. <u>See</u> Fla. Stat. § 627.736(4)(b)(6)(permitting insurers to assert that PIP claims were medically unnecessary, fraudulent, unlawful, upcoded, etc., "at any time, including after payment of the claim"). In addition, and contrary to Advanced Diagnostic's contentions, the facts set forth in GEICO's Complaint plausibly demonstrate that Defendants Desai, Martinez, and Zimmelman were not legitimately doing their jobs as "medical directors" at the respective Advanced Diagnostic clinics, that the Advanced Diagnostic clinics therefore operated in violation of the Clinic Act, and that the alleged statements in the EOBs regarding Advanced Diagnostic's non-compliance with the Clinic Act actually were true.

More generally, the fact that the Advanced Diagnostic clinics have facially-valid clinic licenses is immaterial. The Clinic Act and its attendant regulations make clear that plaintiff-insurers <u>may look beyond a facially-valid clinic license</u> to determine whether a clinic or entity is operating in violation of the Clinic Act. <u>See</u>, <u>e.g.</u>, Fla. Stat. § 400.9935(3); 59A-33.006(14), F.A.C.; <u>see also</u> <u>Allstate Ins. Co. v. Vizcay</u>, 826 F.3d 1326 (11th Cir. 2016); <u>Alternative Med. Ctr. of Fla.</u>, <u>supra</u>; <u>Government Employees Insurance Co. et al v. Cereceda</u>, et al., S.D. Fla. Case No. 19-cv-22206, at Docket Nos. 57, 72; <u>State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.</u>, 2015 U.S. Dist. LEXIS 94434 (S.D. Fla. 2015); <u>Quality Diagnostic</u>, <u>supra</u> (all of which stand for the well-settled rule that a plaintiff-insurer can look beyond a facially-valid clinic license to allege a violation of the Clinic Act).

(iv)    Through some unspecified means, the EOBs sent by GEICO to its Insureds supposedly have caused the Advanced Diagnostic Defendants to experience a decrease in the number of MRIs performed at Advanced Diagnostic's clinic locations, as well as a decrease in referrals to Advanced Diagnostic.  <u>See</u> ECF No. 51, pp. 40-43.

Based on these allegations, the Advanced Diagnostic Defendants assert the following Counterclaims against GEICO:

(i)    The First Counterclaim – for tortious interference with contractual or prospective business relationships – seeks damages based on allegations that GEICO was aware that Advanced Diagnostic maintained contractual or prospective business relationships with GEICO Insureds, and supposedly interfered with these relationships by sending the EOBs to its own Insureds.  <u>See</u> ECF No. 51, p. 43.

(ii)    The Second Counterclaim – for defamation <u>per se</u> – seeks damages based on the supposedly-false statement in the EOBs that "[t]his claim is denied because the provider is not in compliance with the licensing and operating requirements of the Florida Health Care Clinic Act, Fla. Stat. 400.990, et seq." <u>See</u> ECF No. 51, pp. 44-45.

As discussed below, these Counterclaims are defective, and should be dismissed.

ARGUMENT

I.      Advanced Diagnostic's Tortious Interference Counterclaim Should be Dismissed

To state a cause of action for tortious interference with a business relationship under Florida law, a plaintiff must sufficiently plead these elements: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." McKesson Corp. v. Benzer Pharmacy Holding LLC, No. 8:20-cv-2186-T-33AAS, 2020 U.S. Dist. LEXIS 225674, at *21 (M.D. Fla. 2020) (Hernandez Covington, J.), quoting Duty Free Ams., Inc. v. Estee Lauder Cos., 797 F.3d 1248, 1279 (11th Cir. 2015).

To adequately plead the existence of a business relationship, "the Florida Supreme Court has stated that... the plaintiff must prove a business relationship with identifiable customers." Coach Servs. v. 777 Lucky Accessories, Inc., 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (internal quotations and citations omitted). See, e.g., Fin-S Tech, LLC v. Surf Hardware International-USA, Inc., 2014 U.S. Dist. LEXIS 200704 at * 36 (S.D. Fla. 2014)("[U]nder Florida law, generalized allegations of business relationships with unidentified customers are insufficient to state a claim for tortious interference with business relationships"); Ferguson Transp., Inc. v. N. Am. Van Lines, Inc., 687 So. 2d 821, 821 (Fla. 1996)("[T]o establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with

identifiable customers."); <u>Sarkis v. Pafford Oil Co., Inc.</u>, 697 So. 2d 524, 526-27 (Fla. 1st

DCA 1997)(claim of interference with a business relationship properly dismissed

because the complaint alleged only a "general loss of business" and failed to "identify

the customers who were the subject of the alleged interference").

In the present case, Advanced Diagnostic alleges that GEICO was aware that

Advanced Diagnostic maintains contractual or prospective business relationships with

GEICO Insureds. <u>See</u> ECF No. 51, p. 43. Advanced Diagnostic further alleges that GEICO

has interfered with these relationships by sending EOBs – to its own Insureds – which

state that Advanced Diagnostic is not in compliance with the licensing and operating

requirements of the Clinic Act.  <u>Id</u>.

However, Advanced Diagnostic does not identify a single contract or

relationship with any GEICO Insureds that Advanced Diagnostic <u>actually lost</u> as a result

of GEICO's actions.[4] Instead, Advanced Diagnostic claims that "certain" totally

unspecified "primary care physicians" no longer refer patients to Advanced Diagnostic,

and that "other patients" – who, like the "primary care physicians", are totally

---

[4] Though Advanced Diagnostic alleges that GEICO has sent "at least 198 EOBs to patients" who were purportedly treated at Advanced Diagnostic, <u>they do not allege any facts to suggest that any of the GEICO Insureds who received these EOBs stopped treating with Advanced Diagnostic as the result of the EOBs.</u>  <u>See</u> ECF No. 51, p. 40. Nor can Advanced Diagnostic base a tortious interference claim on speculation regarding the prospect of continued business from these former patients. <u>See Ethan Allen v. Georgetown Manor</u>, 647 So. 2d 812 (Fla. 1994) ("The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim."); <u>Bortell v. White Mts. Ins. Grp., Ltd</u>, 2 So. 3d 1041 (Fla. Dist. Ct. App. 2009) (Claim of tortious interference properly dismissed in part because the plaintiff's past "book of business" did not constitute identifiable clients).

unidentified – supposedly have chosen not to be treated by Advanced Diagnostic. See ECF No. 51, p. 43.

In this context, Advanced Diagnostic never manages to plead any facts to explain how the EOBs – which GEICO allegedly sent to its own Insureds, and not to any "primary care physicians" – caused "certain" totally unspecified "primary care physicians" to stop referring patients to Advanced Diagnostic. See ECF No. 51, pp. 40-43. Nor does Advanced Diagnostic plead any facts to plausibly explain how the EOBs that GEICO allegedly sent to its own Insureds – and not to any "other patients" – caused the unspecified "other patients" to stop treating at Advanced Diagnostic. Id. Instead, Advanced Diagnostic simply alleges that one of its marketing representatives was turned away from an (again, totally unspecified) orthopedic center in Orlando[5], that its referrals have been down in recent months (during a global pandemic), and that – "upon information and belief" – the drop in referrals from unspecified health care providers to Advanced Diagnostic is somehow related to the EOBs. See ECF No. 51, p. 42. This, despite the fact that GEICO is alleged to have sent the EOBs to its own Insureds, and not to any unspecified "primary care physicians", "other patients", or anyone else.

---

[5] Aside from the fact that Advanced Diagnostic fails to identify the unspecified "orthopedic center", it does not even allege that its marketing representative was turned away as the result of the supposedly false statements in the EOBs. To the contrary, Advanced Diagnostic explicitly alleges that its representative was turned away from the unnamed orthopedic center as the result of the fact that it has been named as a Defendant in the present federal insurance fraud action. See ECF No. 51, p. 42 (alleging that the office manager at the orthopedic center "expressed disbelief that [Advanced Diagnostic's marketing representative] would come into the office after her employer had been served with a lawsuit.") In this context, Advanced Diagnostic cannot predicate defamation or tortious interference claims on the fact that GEICO has commenced or prosecuted this action. See, e.g., Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1274 (11th Cir. 2004)("Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings.")

At bottom, Advanced Diagnostic has failed to plead sufficient facts to make its tortious interference claims credible or plausible. For this threshold reason, the Counterclaims should be dismissed. See Surf Hardware International-USA, Inc., supra; Pafford Oil Co., Inc., supra; and compare Government Employees Insurance Co. et al v. Cereceda, et al., S.D. Fla. Case No. 19-cv-22206, at ECF No. 91 (declining to dismiss counterclaim for tortious interference where – in contrast to the present case – the counterclaim-plaintiffs specifically identified two patients whose business actually was diverted as a result of GEICO's alleged interference).

Even if Advanced Diagnostic were to plausibly identify some specific GEICO Insureds who stopped treating at Advanced Diagnostic as the result of the supposedly-tortious EOBs (and it has failed to do so), it still would be unable to state any claim against GEICO for tortious interference. Courts have rejected tortious interference claims based on allegations that an insurance company interfered with the business relationships between its insureds and a service provider who expected to be paid out of the insured's insurance benefits. The reason for this is that "'[t]here can be no claim for tortious interference with a business relationship where the action complained of is undertaken to safeguard or promote one's financial or economic interest." Gunder's Auto Ctr. v. State Farm Ins., 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009)(dismissing tortious interference claim based on allegations that insurer steered its insureds away from using a particular automobile repair shop through false statements, reasoning that "[b]ecause State Farm must indemnify the plaintiff's customer for the repair

11

performed by the plaintiff, State Farm is an interested party in the business relation between the plaintiff and those customers who are State Farm insureds"); see also Columna, Inc. v. Aetna Health, Inc., 2019 U.S. Dist. LEXIS 155449 at * 15 (S.D. Fla. 2019)(granting motion to dismiss tortious interference claim based on allegations – just like Advanced Diagnostic's allegations in the present case – that insurer interfered with relationship between healthcare provider and the insurer's own insureds by making false statements in EOBs, because the defendant insurer was not a stranger to the relationship between the plaintiff health care provider and the insureds); Hernandez Auto Painting and Body Works, Inc. v. State Farm Mut. Auto. Ins. Co., 2009 U.S. Dist. LEXIS 83669 at * 2 (S.D. Ga. 2009)(dismissing tortious interference claim based on allegations that defendant insurer systematically steered customers away from plaintiff's repair shop to other shops with lower labor charges, and holding that "Plaintiff contends defendant has interfered in its insured's choice of repair facility in situations where Defendant is obligated to pay the cost of the repair. ... Plaintiff cannot seriously contend that Defendant has no economic interest in this transaction or the parties to it – Defendant is financing the transaction.")(Emphasis in original); but see Cereceda, supra (finding similar arguments for dismissal of tortious interference claim were not properly resolved on a motion to dismiss, where – in contrast to the present case – the health care provider/counterclaim-plaintiff had actually identified some patients who allegedly stopped treating with it as the result of the alleged tortious interference).

Of course, where a counterclaim-defendant is plausibly alleged to have used "improper means" to interfere with a business relationship, a tortious interference claim may lie even if – as in the present case – the counterclaim-defendant is not a stranger to the relationship, or has a financial interest in the relationship. See, e.g., Taxinet, Corp. v. Leon, 2018 U.S. Dist. LEXIS 116128 at * 18 - * 19 (S.D. Fla. 2018). However, a counterclaim-plaintiff like Advanced Diagnostic still must plead some facts to plausibly demonstrate that the "improper means" of interference actually led to a breach of the relationship and resulting damages. Id.; see also Benzer Pharmacy Holding LLC. In the present case, though Advanced Diagnostic seems to be trying to allege that GEICO's purported misrepresentations in the EOBs constituted "improper means", Advanced Diagnostic completely fails to plead any facts to suggest that any GEICO Insured who received the EOBs stopped treating with Advanced Diagnostic as the result of the EOBs.[6] Instead, Advanced Diagnostic vaguely alleges that unidentified "other patients" and unspecified "primary care physicians" – who are not alleged to have received the EOBs – somehow stopped dealing with Advanced Diagnostic because of the EOBs.

Accordingly, Advanced Diagnostic's tortious interference Counterclaim should be dismissed.

---

[6] Advanced Diagnostic would be hard-pressed to identify any GEICO Insured who stopped treating with it as the result of the EOBs, considering that – as alleged in the Counterclaims – GEICO does not send the EOBs until after Advanced Diagnostic has already purported to treat the Insureds.  See ECF No. 51, p. 40.

II.     Advanced Diagnostic's Counterclaim for Defamation Per Se Should be Dismissed

Along similar lines, Advanced Diagnostic implausibly claims that the statements in the EOBs sent to the 198 GEICO Insureds are false, and prejudiced Advanced Diagnostic's business by somehow causing unspecified "other patients", and unidentified "past referral sources" – who are not even alleged to have received the EOBs – to stop doing business with Advanced Diagnostic. See ECF No. 51, p. 44.

Under Florida law, to assert a claim for defamation, a plaintiff must allege that: "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to another." Alan v. Wells Fargo Bank, N.A., 604 F.App'x 863, 865 (11th Cir. 2015)(affirming dismissal of a defamation per se claim in part because the "negative stigma or irreparable harm sufficient to support a claim" could not come from the issuance of an overdraft report from a bank.)

"A claim for defamation per se may proceed under a theory of libel per se or slander per se depending on the facts of the case." Klayman v. Judicial Watch, Inc., 22 F. Supp. 3d 1240 (S.D. Fla. 2014).  A written publication – like an EOB – may rise to the level of libel per se "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) tends to injure one in his trade or profession."

14

Murray v. Pronto Installations, Inc., No. 8:20-cr-824-T-24AEP, 2020 U.S. Dist. LEXIS

213494, at *6 (M.D. Fla. 2020), quoting Richard v. Gray, 62 So. 2d 597, 598 (Fla. 1953).

As a threshold matter, the Court should dismiss the defamation per se

Counterclaim because Advanced Diagnostic's conclusory allegations fail to identify any

specific Insureds who received the allegedly defamatory EOBs. See, e.g., Ward v. Triple

Canopy, Inc., 2017 U.S. Dist. LEXIS 115472 at * 6 (M.D. Fla. 2017)("Under Florida law,

a defamation plaintiff must plead the identity of the particular person to whom the

remarks were made with a reasonable degree of certainty to afford the defendant

enough information to determine affirmative defenses.")(Internal quotations and

citation omitted).

Additionally, Advanced Diagnostic has failed to plead any facts to plausibly

allege that the statements in the EOBs actually tended to injure Advanced Diagnostic

in its trade or profession. Though Advanced Diagnostic alleges that GEICO sent EOBs,

it has failed to adequately plead that GEICO's sending of EOBs to unidentified

individuals tended to injure Advanced Diagnostic's trade or profession. For instance,

Advanced Diagnostic alleges that unspecified "other patients" "have elected to receive

treatment at other radiology clinics" but make no claim that these Insureds were

among the 198 that received the EOBs explaining that Advanced Diagnostic was in

violation of the Clinic Act.  See ECF No. 51, p. 44.  Accordingly, the Counterclaim for

defamation per se should be dismissed.

In any case, the allegedly-defamatory EOBs are alleged to have been sent by GEICO, to unspecified GEICO Insureds, in response to claims that Advanced Diagnostic had made on the Insureds' PIP insurance policies. As a result, the statements in the EOBs are subject to a qualified privilege. See, e.g., Pierson v. Orlando Reg'l Healthcare Sys., 2010 U.S. Dist. LEXIS 33974 at * 32 - * 33 (M.D. Fla. 2010)("A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation.") While this privilege can be overcome through a showing of "express malice", courts have not hesitated to dismiss defamation claims where – as in the present case – the plaintiff or counterclaim-plaintiff fails to plead any facts to demonstrate any "express malice".[7] See id. In this case, Advanced Diagnostic simply alleges that the statements in the EOBs were false, and that GEICO either knew that they were false or acted "with negligent disregard as to the falsity of such statements." See ECF No. 51, p. 44. These kinds of equivocal allegations are not sufficient to plead express malice or to overcome the qualified privilege pertaining to EOBs sent from GEICO to its own Insureds, regarding claims on the Insureds' insurance policies. See Orlando Reg'l Healthcare Sys., supra (dismissing defamation claim at the pleading

---

[7] In this context, GEICO respectfully submits that Advanced Diagnostic's tendentious summaries of other, totally unrelated lawsuits in which GEICO was either a plaintiff or a defendant are totally insufficient to plausibly allege that GEICO acted with "express malice" in the present case.

16

stage where defamatory statement was subject to qualified privilege, plaintiff did not plead any facts to demonstrate "express malice", and instead the malice was "alleged alternatively to negligence and recklessness", but the "alternative pleading [did] not equate to an allegation of 'express malice.'"); Mktg. Concepts Int'l v. Foglia, 2007 U.S. Dist. LEXIS 114306 at * 5 (S.D. Fla. 2007)(dismissing defamation counterclaim where alleged defamatory statements were subject to qualified privilege, and counterclaim-plaintiff failed to sufficiently allege express malice, a "prerequisite[] to bringing a defamation claim when a qualified privilege applies."); Jarzynka v. St. Thomas Univ. Sch. of Law, 310 F. Supp. 2d 1256 (S.D. Fla. 2004)(dismissing defamation claim where the allegedly-defamatory statements were subject to a qualified privilege, and – though the plaintiff alleged that the defendant made the statements recklessly – the "recklessness" allegations were insufficient to plead express malice).[8]

Accordingly, Advanced Diagnostic's defamation Counterclaim should be dismissed.

---

[8] Though Advanced Diagnostic has not alleged that GEICO acted with "express malice", or even any facts from which any "express malice" could be inferred, it is worthwhile to note that "Express malice is ill will, hostility and an evil intention to defame and injure. ... Express malice cannot be inferred from the fact that some statements are untrue.... A conclusory allegation unsupported by factual allegations that statements were made maliciously is not an allegation of express malice." Allison v. Parise, 2013 U.S. Dist. LEXIS 32181 at * 6 (M.D. Fla. 2013).

## CONCLUSION

For the reasons set forth herein, Advanced Diagnostic's First and Second Counterclaims should be dismissed.

Respectfully submitted,

/s/ John P. Marino
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile: (904) 598-6204
jmarino@sgrlaw.com
ltrowell@sgrlaw.com
kwenger@sgrlaw.com

Max Gershenoff (admitted pro hac vice)
Michael Vanunu (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone: (516) 357-3000
Facsimile: (516) 357-3333
max.gershenoff@rivkin.com
michael.vanunu@rivkin.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on March 29, 2021, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system, which will provide notice and the

foregoing document to the counsel of record in this case.

_/s/ John P. Marino_
Attorney