**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY
CO.,

       Plaintiffs,

vs.

AFO IMAGING, INC. d/b/a ADVANCED
DIAGNOSTIC GROUP, RADIOLOGY IMAGING
SPECIALISTS, LLC d/b/a CAREFIRST
IMAGING, KEVIN JOHNSON, CHINTAN DESAI,
M.D., ROBERT D. MARTINEZ, M.D., and
STANLEY ZIMMELMAN, M.D.,

       Defendants.

_____/

CASE NO.: 8:20-cv-02419-VMC-CPT

**PLAINTIFFS' MOTION AND SUPPORTING MEMORANDUM TO
DISMISS  DEFENDANT RADIOLOGY IMAGING SPECIALISTS,
<u>LLC d/b/a CAREFIRST IMAGING'S COUNTERCLAIMS</u>**

Plaintiffs, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs",) move to dismiss Defendant Radiology Imaging Specialists, LLC d/b/a CareFirst Imaging's ("CareFirst") First, Second, and Third Counterclaims (the "Counterclaims") pursuant to Fed. R. Civ. P. 12(b)(6). See ECF No. 53.

The grounds and authority for this motion are set forth in the following supporting memorandum.  The memorandum is incorporated as part of this motion.

## MEMORANDUM

GEICO respectfully submits the following memorandum in support of its motion to dismiss CareFirst's First, Second, and Third Counterclaims.

## SUMMARY

GEICO's Complaint in this action alleges – in substance – that CareFirst and its co-Defendants submitted a large amount of fraudulent and unlawful no-fault ("personal injury protection" or "PIP") insurance billing to GEICO for purported magnetic resonance imaging studies ("MRIs"), and that GEICO was damaged by its payments on those PIP charges. See ECF No. 1, passim. Based on these allegations, GEICO asserts claims against CareFirst and its co-Defendants for, variously, civil RICO violations under 18 U.S.C. § 1962(c) and (d), violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA"), common law fraud, and unjust enrichment. See

ECF No. 1, ¶¶ 150, <u>et seq</u>. Through these claims, GEICO seeks – among other things – to recover more than $1,900,000.00 that it already has paid in reliance on the fraudulent billing that the Defendants submitted through CareFirst. <u>Id</u>. In addition, GEICO seeks a declaratory judgment to the effect that it is not liable to pay any of CareFirst's outstanding and unpaid billing, because of the fraudulent and unlawful activity alleged in the Complaint. <u>Id</u>.

Against this backdrop, CareFirst has asserted defective tortious interference, defamation, and injurious falsehood Counterclaims.  <u>See</u> ECF No. 53. As discussed herein, the Counterclaims should be dismissed.

<u>BACKGROUND</u>

I.  <u>GEICO's Complaint</u>

GEICO commenced this action on October 16, 2020.  <u>See</u> ECF No. 1.  GEICO respectfully refers the Court to the Complaint for the full contours of CareFirst and its co-Defendants' interrelated fraudulent schemes. Briefly, however, GEICO alleges – among other things – that CareFirst and its owner, Defendant Chintan Desai, M.D. ("Desai") (collectively the "CareFirst Defendants"), used CareFirst as a vehicle to submit a large amount of fraudulent and unlawful PIP billing to GEICO for medically unnecessary, illusory, and non-reimbursable MRI services. <u>See</u> ECF No. 1, <u>passim</u>. Relatedly, GEICO alleges that Desai did not legitimately supervise CareFirst's business activities, inasmuch as Desai never conducted reviews of the billing or treatment records from CareFirst to ensure that the billing was not fraudulent or unlawful.  <u>See</u>

2

ECF No. 1, ¶¶ 130-138, and passim. By extension, GEICO alleges that the PIP billing the CareFirst Defendants submitted through CareFirst to GEICO falsely represented that the services billed through CareFirst were lawfully provided, that CareFirst qualified for the exemption from licensure as a "health care clinic" set forth in the Florida Health Care Clinic Act (the "Clinic Act")[1], and that CareFirst was entitled to reimbursement on the PIP charges, when in fact it was not. Id.

## II.   The CareFirst Defendants' Motion to Dismiss

On January 11, 2021, the CareFirst Defendants moved to dismiss GEICO's Complaint. See ECF No. 38. In their motion to dismiss, the CareFirst Defendants argued – among other things – that GEICO's highly-particularized fraud and racketeering claims were somehow vague, indefinite, implausible, and otherwise defective. See id., passim. GEICO opposed the CareFirst Defendants' motion to dismiss. See ECF No. 47. The Court then denied the CareFirst Defendants' motion to dismiss. See ECF No. 52.

## III.   The CareFirst Defendants' Answer and Counterclaims

On March 26, 2021, the CareFirst Defendants responded to GEICO's Complaint by filing their Answer and Counterclaims. See ECF No. 53. In their Answer, the CareFirst Defendants generally deny the substantive allegations in the Complaint. In addition, the CareFirst Defendants raise various affirmative defenses in their Answer. See ECF No. 53, pp. 43-45.

In their Counterclaims, the CareFirst Defendants allege – in substance – that:

---

[1] See Fla. Stat. § 400.9905(4)(g).

(i)     GEICO supposedly has a "pattern and practice" of wrongfully denying PIP claims, and CareFirst has filed collections lawsuits against GEICO in Florida county courts, seeking to collect on some of the PIP claims that GEICO denied. See ECF No. 53, pp. 48-53.[2]

(ii)    Though GEICO contends that CareFirst is not entitled to recover on any of its outstanding billing because of the fraudulent and unlawful activity described in the Complaint, GEICO has settled some of CareFirst's county court PIP collections lawsuits in the months since it commenced this action. See ECF No. 53, pp. 53-54.

(iii)   On 85 occasions when GEICO denied CareFirst's PIP claims for MRIs that CareFirst supposedly provided to GEICO insureds ("Insureds"), GEICO

---

[2] CareFirst attempts to buttress its Counterclaims with allegations to the effect that, in other, totally unrelated cases over the years, GEICO either was alleged to have improperly denied insurance claims, alleged to have improperly failed to settle insurance claims, or itself has alleged that health care providers/defendants have engaged in fraudulent and unlawful conduct. See ECF No. 53, pp. 50-53. GEICO respectfully submits that CareFirst's tendentious summaries of these unrelated cases have no actual bearing on the claims, counterclaims, or defenses in the present case, and certainly do not make CareFirst's otherwise defective Counterclaims viable or plausible. In this context – and though CareFirst notably fails to mention it – federal courts in Florida and elsewhere not only have found GEICO's anti-fraud lawsuits and claims to be legally sufficient, but also have granted GEICO judgments on its PIP fraud claims. See, e.g., Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care Inc., 2019 U.S. Dist. LEXIS 220674 (S.D. Fla. 2019)(granting GEICO summary judgment on fraud, unjust enrichment, FDUTPA, and declaratory judgment claims against health care clinic and other members of alleged PIP insurance fraud ring); Gov't Emples. Ins. Co. v. KJ Chiropractic Center LLC, M.D. Fla. Case No. 6:12-cv-01138-PGB-DCI, at ECF No. 495 (granting GEICO summary judgment on RICO, fraud, FDUTPA, and unjust enrichment claims against participants in alleged PIP insurance fraud ring); Government Employees Insurance Co. et al. v. DG Esthetic and Therapy Center, Inc. et al., S.D. Fla. Case No. 1:18-cv-20921-CMA, at Docket No. 29 (denying motion to dismiss GEICO's PIP fraud and racketeering claims against allegedly fraudulent health care clinic and its associates); Gov't Emples. Ins. Co. v. Alternative Med. Ctr. of Fla., 2017 U.S. Dist. LEXIS 231394 (S.D. Fla. 2017)(denying motion to dismiss GEICO's PIP fraud and racketeering claims against allegedly fraudulent health care clinic and its associates).

sent Explanations of Benefits ("EOBs") – <u>to its own Insureds</u> – which stated that "[t]his claim is denied because the provider [<u>e.g.</u>, CareFirst] is not in compliance with the licensing and operating requirements of the Florida Health Care Clinic Act, Fla. Stat. 400.990, et seq." <u>See</u> ECF No. 53, p. 54.  CareFirst also alleges that GEICO is making "similarly defamatory representations" to GEICO's own Insureds, their Insureds' attorneys, CareFirst's billing company, and unspecified "others" by sending largely unidentified "denial communications".  See ECF No. 53, pp. 55, 59.  As the sole example of these "defamatory representations," CareFirst references <u>one</u> letter from GEICO to a law firm dated March 9, 2021, which simply stated that "GEICO has a reasonable belief that the health care provider [<u>e.g.</u>, CareFirst] on whose behalf the demand was submitted is not eligible to recover Personal Injury Protection benefits." <u>See</u> ECF No. 53, p. 55.

(iv)   The CareFirst Defendants claim that these statements within the EOBs and letter were false, because the CareFirst clinic locations were properly exempt from the Clinic Act's clinic licensing and operating requirements, and are "regularly certified" as exempt by the Florida Agency for Health Care Administration ("AHCA"), which licenses Florida health care clinics. <u>Id</u>.[3]

---

[3] CareFirst contends that "GEICO knows or should know that the statements in the EOBs and denials are false because it has continued to make payments under the PIP laws for GEICO Patients who seek treatment at CareFirst clinics as recently as March 2021." <u>See</u> ECF No. 53, p. 56.  However, Florida's PIP insurance law <u>explicitly</u> permits plaintiff-insurers to challenge fraudulent or unlawful PIP claims

(v)     Through some unspecified means, the EOBs and letter sent by GEICO to

its Insureds and unspecified others supposedly have caused the CareFirst

Defendants to experience a decrease in the number of MRIs performed at

CareFirst's office locations, as well as a decrease in referrals to CareFirst.

<u>See</u> ECF No. 53, pp. 56-58.

Based on these allegations, the CareFirst Defendants assert the following

Counterclaims against GEICO:

(i)     The First Counterclaim – for tortious interference with contractual or

prospective business relationships – seeks damages based on allegations

that GEICO was aware that CareFirst maintained contractual or

prospective business relationships with GEICO Insureds, and supposedly

---

at any time, even after they are paid. <u>See</u> Fla. Stat. § 627.736(4)(b)(6)(permitting insurers to assert that PIP claims were medically unnecessary, fraudulent, unlawful, upcoded, etc., "at any time, including after payment of the claim"). In addition, and contrary to CareFirst's contentions, the facts set forth in GEICO's Complaint plausibly demonstrate that Defendant Desai was not legitimately supervising the business activities of CareFirst, that CareFirst therefore never qualified for the exemption from licensure as a "health care clinic" set forth in the Clinic Act, and that the alleged statements in the EOBs and letter regarding CareFirst's non-compliance with the Clinic Act actually were true.

More generally, the fact that the CareFirst clinics have facially-valid Certificates of Exemption from the AHCA is immaterial. The Clinic Act and its attendant regulations make clear that plaintiff-insurers <u>may look beyond a facially-valid clinic license or certificate of exemption</u> to determine whether a clinic or entity is operating in violation of the Clinic Act. <u>See</u>, <u>e.g.</u>, Fla. Stat. § 400.9935(3); 59A-33.006(14), F.A.C.; <u>see also</u> <u>Allstate Ins. Co. v. Vizcay</u>, 826 F.3d 1326 (11th Cir. 2016); <u>Alternative Med. Ctr. of Fla.</u>, <u>supra</u>; <u>Government Employees Insurance Co. et al v. Cereceda</u>, et al., S.D. Fla. Case No. 19-cv-22206, at Docket Nos. 57, 72; <u>State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.</u>, 2015 U.S. Dist. LEXIS 94434 (S.D. Fla. 2015); <u>Quality Diagnostic</u>, <u>supra</u> (all of which stand for the well-settled rule that a plaintiff-insurer can look beyond a facially-valid clinic license or certificate of exemption to allege a violation of the Clinic Act).

interfered with these relationships by sending the EOBs to its own Insureds.  See ECF No. 53, pp. 58-59.

(ii)     The Second Counterclaim – for defamation per se – seeks damages based on the supposedly-false statement in the EOBs that "[t]his claim is denied because the provider is not in compliance with the licensing and operating requirements of the Florida Health Care Clinic Act, Fla. Stat. 400.990, et seq." and the supposedly-false statement in "denial communications" that "GEICO has a reasonable belief that the health care provider on whose behalf the demand was submitted is not eligible to recover Personal Injury Protection benefits."  See ECF No. 53, pp. 59-60.

(iii)    The Third Counterclaim – for injurious falsehood – seeks damages based on the supposedly-false statement in the EOBs that "[t]his claim is denied because the provider is not in compliance with the licensing and operating requirements of the Florida Health Care Clinic Act, Fla. Stat. 400.990, et seq." and the supposedly-false statements in unspecified "other communications" sent to 85 Insureds, attorneys, and CareFirst's billing company.  See ECF No. 53, pp. 60-62.

As discussed below, these Counterclaims are defective, and should be dismissed.

**ARGUMENT**

**I.      CareFirst's Tortious Interference Counterclaim Should be Dismissed**

To state a cause of action for tortious interference with a business relationship under Florida law, a plaintiff must sufficiently plead these elements: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." McKesson Corp. v. Benzer Pharmacy Holding LLC, No. 8:20-cv-2186-T-33AAS, 2020 U.S. Dist. LEXIS 225674, at *21 (M.D. Fla. 2020) (Hernandez Covington, J.), quoting Duty Free Ams., Inc. v. Estee Lauder Cos., 797 F.3d 1248, 1279 (11th Cir. 2015).

To adequately plead the existence of a business relationship, "the Florida Supreme Court has stated that… the plaintiff must prove a business relationship with identifiable customers." Coach Servs. v. 777 Lucky Accessories, Inc., 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (internal quotations and citations omitted). See, e.g., Fin-S Tech, LLC v. Surf Hardware International-USA, Inc., 2014 U.S. Dist. LEXIS 200704 at *36 (S.D. Fla. 2014)("[U]nder Florida law, generalized allegations of business relationships with unidentified customers are insufficient to state a claim for tortious interference with business relationships"); Ferguson Transp., Inc. v. N. Am. Van Lines, Inc., 687 So. 2d 821, 821 (Fla. 1996)("[T]o establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with

identifiable customers."); Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 526-27 (Fla. 1st DCA 1997)(claim of interference with a business relationship properly dismissed because the complaint alleged only a "general loss of business" and failed to "identify the customers who were the subject of the alleged interference").

In the present case, CareFirst alleges that GEICO was aware that CareFirst maintains contractual or prospective business relationships with GEICO Insureds. See ECF No. 53, p. 58. CareFirst further alleges that GEICO has interfered with these relationships by sending EOBs – to its own Insureds – which state that CareFirst is not in compliance with the licensing and operating requirements of the Clinic Act. Id.

However, CareFirst does not identify a single contract or relationship with any GEICO Insureds that CareFirst actually lost as a result of GEICO's actions.[4] Instead, CareFirst claims that "certain" totally unspecified "primary care physicians" no longer refer patients to CareFirst, and that "other patients" – who, like the "primary care physicians", are totally unidentified – supposedly have chosen not to be treated by CareFirst. See ECF No. 53, p. 59.

---

[4] Though CareFirst alleges that GEICO has sent "at least 85 EOBs to patients" who were purportedly treated at CareFirst, they do not allege any facts to suggest that any of the GEICO Insureds who received these EOBs stopped treating with CareFirst as the result of the EOBs. See ECF No. 53, p. 54. Nor can CareFirst base a tortious interference claim on speculation regarding the prospect of continued business from these former patients. See Ethan Allen v. Georgetown Manor, 647 So. 2d 812 (Fla. 1994) ("The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim."); Bortell v. White Mts. Ins. Grp., Ltd, 2 So. 3d 1041 (Fla. Dist. Ct. App. 2009) (Claim of tortious interference properly dismissed in part because the plaintiff's past "book of business" did not constitute identifiable clients).

In this context, CareFirst never manages to plead any facts to explain how the EOBs or "denial communications" – which GEICO allegedly sent <u>to its own Insureds</u> (or the Insureds' lawyers) and not to any "primary care physicians" – caused "certain" totally unspecified "primary care physicians" to stop referring patients to CareFirst. <u>See</u> ECF No. 53, pp. 56-58. Nor does CareFirst plead any facts to plausibly explain how the EOBs or "denial communications" that GEICO allegedly sent to its own Insureds – and not to any "other patients" – caused the unspecified "other patients" to stop treating at CareFirst. <u>Id</u>. Instead, CareFirst simply alleges that "several referring physicians" (again, totally unspecified) have represented that "GEICO's tactics are chilling their willingness" to refer patients, that its referrals from one unnamed "example provider" have been down in recent months (during a global pandemic), and that – "upon information and belief" – the drop in referrals from unspecified health care providers to CareFirst is somehow related to the EOBs. <u>See</u> ECF No. 53, pp. 56-57. This, despite the fact that GEICO is alleged to have sent the EOBs and "denial communications" <u>to its own Insureds</u> or the Insureds' lawyers, and not to any unspecified "primary care physicians", "other patients", or anyone other identified people.

At bottom, CareFirst has failed to plead sufficient facts to make its tortious interference claims credible or plausible. For this threshold reason, the Counterclaims should be dismissed. <u>See</u> <u>Surf Hardware International-USA, Inc.</u>, <u>supra</u>; <u>Pafford Oil Co., Inc.</u>, <u>supra</u>; <u>and</u> <u>compare</u> <u>Government Employees Insurance Co. et al v. Cereceda</u>, et al., S.D. Fla. Case No. 19-cv-22206, at ECF No. 91 (declining to dismiss counterclaim for

tortious interference where – in contrast to the present case – the counterclaim-plaintiffs <u>specifically identified two patients whose business actually was diverted</u> as a result of GEICO's alleged interference).

Even if CareFirst <u>were</u> to plausibly identify some specific GEICO Insureds who stopped treating at CareFirst as the result of the supposedly-tortious EOBs or "denial communications" (and it has failed to do so), it still would be unable to state any claim against GEICO for tortious interference. Courts have rejected tortious interference claims based on allegations that an insurance company interfered with the business relationships between its insureds and a service provider who expected to be paid out of the insured's insurance benefits. The reason for this is that "'[t]here can be no claim for tortious interference with a business relationship where the action complained of is undertaken to safeguard or promote one's financial or economic interest." <u>Gunder's Auto Ctr. v. State Farm Ins.</u>, 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009)(dismissing tortious interference claim based on allegations that insurer steered its insureds away from using a particular automobile repair shop through false statements, reasoning that "[b]ecause State Farm must indemnify the plaintiff's customer for the repair performed by the plaintiff, State Farm is an interested party in the business relation between the plaintiff and those customers who are State Farm insureds"); <u>see also</u> <u>Columna, Inc. v. Aetna Health, Inc.</u>, 2019 U.S. Dist. LEXIS 155449 at * 15 (S.D. Fla. 2019)(granting motion to dismiss tortious interference claim based on allegations – just like CareFirst's allegations in the present case – that insurer interfered with

relationship between healthcare provider and the insurer's own insureds by making false statements in EOBs, because the defendant insurer was not a stranger to the relationship between the plaintiff health care provider and the insureds); Hernandez Auto Painting and Body Works, Inc. v. State Farm Mut. Auto. Ins. Co., 2009 U.S. Dist. LEXIS 83669 at * 2 (S.D. Ga. 2009)(dismissing tortious interference claim based on allegations that defendant insurer systematically steered customers away from plaintiff's repair shop to other shops with lower labor charges, and holding that "Plaintiff contends defendant has interfered in its insured's choice of repair facility in situations where Defendant is obligated to pay the cost of the repair. ... Plaintiff cannot seriously contend that Defendant has no economic interest in this transaction or the parties to it – Defendant is financing the transaction.")(Emphasis in original); but see Cereceda, supra (finding similar arguments for dismissal of tortious interference claim were not properly resolved on a motion to dismiss, where – in contrast to the present case – the health care provider/counterclaim-plaintiff had actually identified some patients who allegedly stopped treating with it as the result of the alleged tortious interference).

Of course, where a counterclaim-defendant is plausibly alleged to have used "improper means" to interfere with a business relationship, a tortious interference claim may lie even if – as in the present case – the counterclaim-defendant is not a stranger to the relationship, or has a financial interest in the relationship. See, e.g., Taxinet, Corp. v. Leon, 2018 U.S. Dist. LEXIS 116128 at * 18 - * 19 (S.D. Fla. 2018).

However, a counterclaim-plaintiff like CareFirst still must plead some facts to plausibly demonstrate that the "improper means" of interference actually led to a breach of the relationship and resulting damages. Id.; see also Benzer Pharmacy Holding LLC. In the present case, though CareFirst seems to be trying to allege that GEICO's purported misrepresentations in the EOBs or "denial communications" constituted "improper means", CareFirst completely fails to plead any facts to suggest that any GEICO Insured who received the EOBs or "denial communications" stopped treating with CareFirst as the result of the EOBs.[5] Instead, CareFirst vaguely alleges that unidentified "other patients" and unspecified "primary care physicians" – who are not alleged to have received the EOBs or "denial communications" – somehow stopped dealing with CareFirst because of the EOBs and communications.

Accordingly, CareFirst's tortious interference Counterclaim should be dismissed.

## II.  CareFirst's Counterclaim for Defamation Per Se Should be Dismissed

Along similar lines, CareFirst implausibly claims that the statements in the EOBs sent to the 85 GEICO Insureds are false, that statements like those in the March 9, 2021 "denial communication" sent to Insureds, Insureds' attorneys, CareFirst's billing company, and unspecified "others" are false, and that these statements together prejudiced CareFirst's business by somehow, through some totally unspecified means,

---

[5] CareFirst would be hard-pressed to identify any GEICO Insured who stopped treating with it as the result of the EOBs, considering that – as alleged in the Counterclaims – GEICO does not send the EOBs until after CareFirst has already purported to treat the Insureds.  See ECF No. 53, p. 54.

causing unidentified "other patients", and unidentified "past referral sources" – who are not even alleged to have received the EOBs or "denial communications" – to stop doing business with CareFirst. See ECF No. 53, pp. 59-60

Under Florida law, to assert a claim for defamation, a plaintiff must allege that: "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to another." Alan v. Wells Fargo Bank, N.A., 604 F.App'x 863, 865 (11th Cir. 2015)(affirming dismissal of a defamation per se claim in part because the "negative stigma or irreparable harm sufficient to support a claim" could not come from the issuance of an overdraft report from a bank.)

"A claim for defamation per se may proceed under a theory of libel per se or slander per se depending on the facts of the case." Klayman v. Judicial Watch, Inc., 22 F. Supp. 3d 1240 (S.D. Fla. 2014). A written publication – like an EOB – may rise to the level of libel per se "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) tends to injure one in his trade or profession." Murray v. Pronto Installations, Inc., No. 8:20-cr-824-T-24AEP, 2020 U.S. Dist. LEXIS 213494, at *6 (M.D. Fla. 2020), quoting Richard v. Gray, 62 So. 2d 597, 598 (Fla. 1953).

In this setting, CareFirst has failed to plead any facts to plausibly allege that the statements in the EOBs and other communications actually tended to injure CareFirst

in its trade or profession. Though CareFirst alleges that GEICO sent EOBs and other "denial communications", it has failed to adequately plead that GEICO's sending of EOBs and other communications to unidentified individuals, attorneys, and CareFirst's billing company tended to injure CareFirst's trade or profession. For instance, CareFirst alleges that unspecified "other patients" "have elected to receive treatment at other radiology clinics", but CareFirst makes no claim that these Insureds were among the 85 that received the EOBs explaining that CareFirst was in violation of the Clinic Act. See ECF No. 53, p. 60. Accordingly, the Counterclaim for defamation per se should be dismissed.

In any case, the allegedly-defamatory EOBs and other communications are alleged to have been sent by GEICO to unspecified GEICO Insureds, Insureds' attorneys, and CareFirst's billing company, in response to claims that CareFirst had made on the Insureds' PIP insurance policies. As a result, the statements in the EOBs and communications are subject to a qualified privilege. See, e.g., Pierson v. Orlando Reg'l Healthcare Sys., 2010 U.S. Dist. LEXIS 33974 at * 32 - * 33 (M.D. Fla. 2010)("A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation.") While this privilege can be overcome through a showing of "express malice", courts have not hesitated to dismiss defamation claims where – as

in the present case – the plaintiff or counterclaim-plaintiff fails to plead any facts to demonstrate any "express malice".[6] <u>See</u> <u>id</u>. In this case, CareFirst simply alleges that the statements in the EOBs and other communications were false, and that GEICO either knew that they were false <u>or</u> acted "with negligent disregard as to the falsity of such statements." <u>See</u> ECF No. 53, p. 60. These kinds of equivocal allegations are not sufficient to plead express malice or to overcome the qualified privilege pertaining to EOBs sent from GEICO to its own Insureds, regarding claims on the Insureds' insurance policies or pertaining to other communications sent by GEICO to attorneys, CareFirst's billing company, or unspecified "others" regarding claims on the Insureds' insurance policies. <u>See</u> <u>Orlando Reg'l Healthcare Sys.</u>, <u>supra</u> (dismissing defamation claim at the pleading stage where defamatory statement was subject to qualified privilege, plaintiff did not plead any facts to demonstrate "express malice", and instead the malice was "alleged alternatively to negligence and recklessness", but the "alternative pleading [did] not equate to an allegation of 'express malice.'"); <u>Mktg.</u> <u>Concepts Int'l v. Foglia</u>, 2007 U.S. Dist. LEXIS 114306 at * 5 (S.D. Fla. 2007)(dismissing defamation counterclaim where alleged defamatory statements were subject to qualified privilege, and counterclaim-plaintiff failed to sufficiently allege express malice, a "prerequisite[] to bringing a defamation claim when a qualified privilege applies."); <u>Jarzynka v. St. Thomas Univ. Sch. of Law</u>, 310 F. Supp. 2d 1256 (S.D. Fla.

---

[6] In this context, GEICO respectfully submits that CareFirst's tendentious summaries of other, totally unrelated lawsuits in which GEICO was either a plaintiff or a defendant are totally insufficient to plausibly allege that GEICO acted with "express malice" in the present case.

2004)(dismissing defamation claim where the allegedly-defamatory statements were subject to a qualified privilege, and – though the plaintiff alleged that the defendant made the statements recklessly – the "recklessness" allegations were insufficient to plead express malice).[7]

Accordingly, CareFirst's defamation Counterclaim should be dismissed.

### III.   CareFirst's Counterclaim for Injurious Falsehood Should be Dismissed

Injurious falsehood is a term interchangeably used to refer to a group of torts, which includes "slander of title, disparagement of property, or trade libel". See Kanarick v. GE Credit Retail Bank Care Credit, 2013 U.S. Dist. LEXIS 201958 (S.D. Fla. Sep. 6, 2013), quoting Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381 (Fla. 4th Dist. Ct. App. 1999). Generally, injurious falsehood is the "intentional interference with another's economic relations". Id., quoting Procacci v. Zacco, 402 So. 2d 425, 426 (Fla. 4th Dist. Ct. App. 1981).

In order to sustain a claim for injurious falsehood, the counter-plaintiff must adequately allege "(1) a falsehood; (2) published or communicated to a third party; (3) the defendant knew that the falsehood would likely induce others not to deal with the plaintiff; (4) the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages."  Fin. Info. Techs., Inc. v.

---

[7] Though CareFirst has not alleged that GEICO acted with "express malice", or even any facts from which any "express malice" could be inferred, it is worthwhile to note that "Express malice is ill will, hostility and an evil intention to defame and injure. ... Express malice cannot be inferred from the fact that some statements are untrue.... A conclusory allegation unsupported by factual allegations that statements were made maliciously is not an allegation of express malice." Allison v. Parise, 2013 U.S. Dist. LEXIS 32181 at * 6 (M.D. Fla. 2013).

iControl Sys., USA, LLC, No. 8:17-cv-190-T-23SPF, 2018 U.S. Dist. LEXIS 170808, at *3 n.1 (M.D. Fla. Oct. 3, 2018), quoting Bothmann v. Harrington, 458 So.2d 1163, 1168 (Fla. 3d DCA 1984).

As a threshold matter, the Court should dismiss the injurious falsehood Counterclaim because it is barred by Florida's single action rule.  This rule "precludes the recasting of defamation claims as additional, distinct causes of action in tort if all of the claims arise from the same defamatory publication." Soho Ocean Resort TRS, LLC v. Rutois, No. 19-61335-CIV, 2020 U.S. Dist. LEXIS 120467, at *7 (S.D. Fla., 2020), quoting Int'l Sec. Mgmt. Grp., Inc. v. Rolland, 271 So. 3d 33, 48 (Fla. 3d DCA 2018). The purpose of the single action rule is "to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." Id., quoting Callaway Land & Cattle Co. v. Banyon Lakes C. Corp., 831 So. 2d 204, 208 (Fla. 4th DCA 2002).

In the present case, CareFirst pleads the same facts to support both its defamation per se and injurious falsehood claims. See ECF No. 53, pp. 59-62. Specifically, it claims that both the defamation per se and injurious falsehood claims both arise from GEICO's publication of EOBs and "other communications" to GEICO Insureds and others, which is clearly disallowed by Florida's single action rule. See, Fridovich v. Fridovich, 598 So. 2d 65, 69 (Fla. 1992) ("It is clear that a plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repleading the same facts").

Additionally, as also discussed above, CareFirst failed to plead any facts to plausibly allege that the statements in the EOBs and other communications played a material and substantial part in inducing others not to deal with CareFirst. CareFirst merely alleges in a conclusory fashion that "GEICO's false statements played a material and substantial part in inducing CareFirst's patients from continuing to deal with CareFirst". See ECF No. 53, p. 61.   CareFirst fails to make any connection between the EOBs and other communications being sent to GEICO Insureds and the unspecified "other patients" that "have elected to receive treatment at other radiology clinics" or the "certain" referral sources that have allegedly stopped referring patients to CareFirst. Id.

Moreover, CareFirst has failed to sufficiently allege "special damages". Instead, it vaguely and generally contends that GEICO's supposed falsehoods somehow caused unspecified "lost referrals and lost return patient visits", which is not sufficiently particular to plead special damages. See, e.g., Fed. R. Civ. P. 9(g)("If an item of special damage is claimed, it must be specifically stated."); ADT LLC v. Vivint, Inc., 2017 U.S. Dist. LEXIS 123516 at * 16 - * 17 (S.D. Fla. 2017)(dismissing analogous trade libel claim for failure to allege special damages with particularity).

Accordingly, CareFirst's injurious falsehood Counterclaim should be dismissed.

## CONCLUSION

For the reasons set forth herein, CareFirst's First, Second, and Third Counterclaims should be dismissed.

Respectfully submitted,

*/s/ John P. Marino*
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile:  (904) 598-6204
jmarino@sgrlaw.com
ltrowell@sgrlaw.com
kwenger@sgrlaw.com

Max Gershenoff (admitted pro hac vice)
Michael Vanunu (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone: (516) 357-3000
Facsimile:  (516) 357-3333
max.gershenoff@rivkin.com
michael.vanunu@rivkin.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on April 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing and the foregoing document to the counsel of record in this case.

*John P. Marino*
Attorney