UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,

    Plaintiffs,
v.                            Case No. 8:20-cv-2419-VMC-CPT

AFO IMAGING, INC. d/b/a
ADVANCED DIAGNOSTIC GROUP,
et al.,
    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiffs and Counterclaim-Defendants Government Employees Insurance Co., Geico Indemnity Co., Geico General Insurance Company, and GEICO Casualty Co.'s (collectively, "Geico's") Motion to Dismiss Counterclaims (Doc. # 54), filed on March 29, 2021. Defendant and Counterclaimant AFO Imaging, Inc. d/b/a Advanced Diagnostic Group responded on April 19, 2021. (Doc. # 56). For the reasons below, the Motion is granted in part and denied in part.

**I.**    **Background**

Both the Court and the parties are familiar with the facts of the civil conspiracy case. Thus, the Court need not reiterate them in detail here. Advanced Diagnostic owns and operates multiple Florida diagnostic clinics. (Doc. # 1 at ¶

1

10). Geico is a motor vehicle insurer that reimbursed Advanced Diagnostic for certain personal injury protection insurance ("PIP insurance") covered radiology procedures. (Id. at ¶¶ 1, 9). In the underlying suit, Geico asserts that Advanced Diagnostic entered into two related fraudulent schemes with the other Defendants. First, Advanced Diagnostic allegedly submitted or caused to be submitted thousands of PIP insurance charges for medically unnecessary, falsified radiology services. (Id. at ¶¶ 1, 7). Second, the Advanced Diagnostic clinics allegedly operated in violation of Florida law because their medical directors did not properly perform their duties. (Id. at ¶¶ 120-38).

Geico filed the underlying complaint on October 16, 2020. (Doc. # 1). On January 4, 2021, Advanced Diagnostic moved to dismiss the complaint. (Doc. # 36). The Court denied the motion to dismiss on February 25, 2021. (Doc. # 50). On March 11, 2021, Advanced Diagnostic filed its answer, also asserting the following counterclaims against Geico: tortious interference with contractual or prospective business relationships (Count I), and defamation per se (Count II). (Doc. # 51). Now, Geico moves to dismiss the counterclaims. (Doc. # 54). Advanced Diagnostic has responded (Doc. # 56), and the Motion is ripe for review.

**II. <u>Legal Standard</u>**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the counterclaim and construes them in the light most favorable to the counterclaim-plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the counterclaim-plaintiff with all reasonable inferences from the allegations in the counterclaim. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [counterclaim-plaintiff's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the [counterclaim], and matters judicially noticed." <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

3

**III. Analysis**

Geico moves to dismiss both of Advanced Diagnostic's counterclaims. The Court will address each claim in turn.

**A. Tortious Interference**

First, Geico moves to dismiss Count I – Advanced Diagnostic's claim for tortious interference with contractual or prospective business relationships – because it (1) fails to "identify a single contract or relationship with any GEICO Insureds that Advanced Diagnostic actually lost as a result of GEICO's actions," (2) does not "explain how the [explanation of benefits ("EOB")] . . . caused 'certain' totally unspecified 'primary care physicians' to stop referring patients to Advanced Diagnostic" or "caused the unspecified 'other patients' to stop treating at Advanced Diagnostic," and (3) "[t]here can be no claim for tortious interference with a business relationship where the action complained of is undertaken to safeguard or promote one's financial or economic interest." (Doc. # 54 at 9-10 (emphasis and citation omitted)). Advanced Diagnostic responds that the Motion fails to comply with Local Rule 3.01(g), its claim is sufficiently pled, and Geico does not have a privilege to interfere in the business relationship between Advanced Diagnostic and the patients. (Doc. # 56 at 5-14).

### 1. **Local Rule 3.01(g)**

At the outset, the Court agrees with Advanced Diagnostic that the Motion fails to comply with Local Rule 3.01(g), which requires that parties confer in good faith before filing certain motions – including motions to dismiss. Local Rule 3.01(g), M.D. Fla. A certification noting this conferral must be included at the end of the motion. (Id.). Prior to February 2021, however, the Local Rules did not require such conferral when moving to dismiss. See U.S. Dist. Ct. Middle Dist. of Fla., 2020 Local Rule Revisions – Bullet Point Summary, available at https://www.flmd.uscourts.gov/sites/flmd/files/documents/flmd-2020-local-rule-revisions-bullet-point-summary.pdf (last visited June 30, 2021) (noting the expansion of Rule 3.01(g) to include motions to dismiss).

Because this Motion was filed in March 2021 – shortly after the change in Local Rules – and because denying this Motion for this reason would further delay the case, the Court excuses the omission. Accordingly, the Motion is denied as to this requested relief. See Judkins v. Bloomen Int'l, Inc., No. 8:09-cv-2538-EAK-TBM, 2010 WL 2510665, at *2 (M.D. Fla. June 21, 2010) ("The Court will not use this technicality as the basis for denying the motion but advises that Plaintiff's counsel henceforth adhere to Local Rule 3.01(g).").

## 2. Failure to State a Claim

Turning to the substance of the counterclaims, "[t]ortious interference with a contract and tortious interference with a business relationship are very similar causes of action. The primary difference is that in one there is a contract and in the other there is only a business relationship." Plain Bay Sales, LLC v. Gallaher, No. 18-80581-CIV-DIMITROULEAS, 2018 WL 4208343, at *4 (S.D. Fla. Aug. 23, 2018). The Court will address each in turn.

### a. Contractual Relationship

To state a claim for tortious interference with a contractual relationship under Florida law, the plaintiff must sufficiently allege the following elements: (1) "the existence of a contract"; (2) "the defendant's knowledge thereof"; (3) "the defendant's intentional and unjustified procurement of a breach thereof"; and (4) damages. Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1215 (11th Cir. 2018) (citation omitted).

Here, Advanced Diagnostic has not alleged the existence of a contract with any patients. Advanced Diagnostic only cursorily states: "Geico was aware that AFO maintains contractual or prospective business relationships with patients who sustained personal injuries in motor vehicle

accidents and who were insured under polices [(sic)] of insurance issued by Geico." (Doc. # 51 at ¶ 58). This vague allegation fails to raise the alleged right to relief above a speculative level. See Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc., No. 2:18-cv-408-SPC-MRM, 2019 WL 277733, at *8 (M.D. Fla. Jan. 22, 2019) (dismissing a claim for tortious interference with a contractual relationship where the plaintiff failed to allege the existence of an actual contract to which it was a party).

Accordingly, Count I is dismissed without prejudice to the extent it asserts a claim for tortious interference with a contractual relationship. See Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC, No. 12-20744-Civ-SCOLA, 2012 WL 12866788, at *6 (S.D. Fla. Oct. 25, 2012) ("[T]he Amended Complaint fails to allege the existence of a contract that Marcus contends the Defendants interfered with. Although there are other pleading deficiencies regarding Count VII, this defect is fatal.").

### b. Business Relationship

To state a claim for tortious interference with a business relationship under Florida law, the plaintiff must sufficiently allege the following elements: "(1) the existence of a business relationship under which the

plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." Coach Servs., Inc. v. 777 Lucky Accessories, Inc., 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (quoting Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 849 F.2d 1336, 1348-49 (11th Cir. 1987)). "To satisfy the first prong of a tortious interference of a business relationship claim, the plaintiff may allege 'tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large.'" Id. (quoting Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 815 (Fla. 1994)). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Bell v. Tampa Bay Downs, Inc., No. 8:10-cv-2835-JSM-TBM, 2011 WL 6718266, at *1 (M.D. Fla. Dec. 21, 2011) (citation omitted).

Here, the business relationship in question is between Advanced Diagnostic and "patients who sustained personal

8

injuries in motor vehicle accidents and who were insured under polices [(sic)] of insurance issued by Geico" and to whom Advanced Diagnostic "provides health care services." (Doc. # 51 at ¶¶ 58-59). However, Count I does not allege there is or was an understanding between these patients and Advanced Diagnostic such that they would seek medical care at their clinics. See Drenberg v. Focus! . . . On Surety, LLC, No. 6:13-cv-1351-RBD-KRS, 2013 WL 6768667, at *3 (M.D. Fla. Dec. 20, 2013) ("At the pleading stage, it is not necessary to name the specific customers at issue so long as there are sufficient allegations concerning a business relationship that affords the claimant 'existing or prospective legal or contractual rights.'" (citation omitted)). Although Advanced Diagnostic alleges that it had a right to receive payment from Geico, that evidences a business relationship between Advanced Diagnostic and Geico – not between Advanced Diagnostic and these patients. (Doc. # 51 at ¶ 59).

Accordingly, Count I is dismissed without prejudice to the extent it asserts a claim for tortious interference with a business relationship.[1] See Vibo Corp. v. U.S. Flue-Cured Tobacco Growers, Inc., No. 17-22034-WILLIAMS, 2018 WL

---

1. In its response to Geico's Motion, Advanced Diagnostic has not moved for leave to amend. (Doc. # 56).

9

11149759, at *7 (S.D. Fla. May 15, 2018) ("Here, . . . the tortious interference claim must be dismissed because Plaintiff has not identif[ied] any legal rights at stake, and it [has] not allege[d] any instances of customers[, distributors or retailers] not performing pursuant to those legal rights. . . . Absent an allegation of an identifiable agreement [or understanding] . . . that they would return for future business, [Plaintiff] has failed to state a claim. The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim." (internal quotation marks and citations omitted)).

### B. Defamation Per Se

Next, Geico moves to dismiss Count II – Advanced Diagnostic's claim for defamation per se – arguing that it (1) "fail[s] to identify any specific Insureds who received the allegedly defamatory EOBs," (2) "fail[s] to plead any facts to plausibly allege that the statements in the EOBs actually tended to injure Advanced Diagnostic in its trade or profession," and (3) has "not . . . ple[d] express malice or . . . overcome the qualified privilege pertaining to EOBs sent from GEICO to its own Insureds, regarding claims on the Insureds' insurance policies." (Doc. # 54 at 14-17).

"Under Florida law, to state a claim for defamation –

libel or slander – the plaintiff must allege: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to the plaintiff." Rubinson v. Rubinson, 474 F. Supp. 3d 1270, 1274 (S.D. Fla. 2020) (internal quotation marks and citations omitted). "To successfully plead a claim for defamation per se, the plaintiff must allege the 'identity of the particular person to whom the remarks were made with a reasonable degree of certainty' to afford the defendant 'enough information to determine affirmative defenses.'" Aflalo v. Weiner, No. 17-61923-CIV-MORENO, 2018 WL 3235529, at *4 (S.D. Fla. July 2, 2018) (citation and emphasis omitted).

"A written publication constitutes libel per se under Florida law if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." Alan v. Wells Fargo Bank, N.A., 604 F. App'x 863, 865 (11th Cir. 2015). "The significance of the classification of a communication as actionable per se lies in the fact that its victim need not plead or prove malice (except where a privilege is involved) or special damage

11

because malice and the [occurrence] . . . of damage are both presumed from the nature of the defamation." Rubinson, 474 F. Supp. 3d at 1274-75 (quoting Wolfson v. Kirk, 273 So.2d 774, 777 (Fla. 4th DCA 1973)).

"In a libel per se action, consideration is given only to the 'four corners' of the publication." Aflalo, 2018 WL 3235529, at *2 (citation and emphasis omitted). Such per se "defamatory statement[s] must impute conduct to [counterclaimants] 'incompatible with the essential functions of their respective jobs.'" Klayman v. Jud. Watch, Inc., 22 F. Supp. 3d 1240, 1249 (S.D. Fla. 2014) (citation omitted).

Here, Advanced Diagnostic alleges that "[s]ince on or about November 2, 2020, [Geico] has sent [d]efamatory EOBs to at least 198 [Geico]-insured [p]atients." (Doc. # 51 at ¶ 65). These EOBs contained the following allegedly false and defamatory statements: "This claim is denied because the provider is not in compliance with the licensing and operating requirements of the Florida Health Care Clinic Act, Fla. Stat. 400.990, et seq." (Id. at ¶¶ 38, 40). Advanced Diagnostic contends this falls under the third category of defamation per se, as it "tend[s] to injure [Advanced Diagnostic] in its trade or profession." (Id. at ¶ 66).

1. **Specificity**

First, Geico argues that Count II has not sufficiently identified the individuals who received the defamatory EOBs. (Doc. # 54 at 15). The Court disagrees. The counterclaim explains that the 198 individuals are insured by Geico, received medical care from an Advanced Diagnostic clinic, and received an EOB from Geico denying their claim. (Doc. # 51 at ¶¶ 36-39, 65). Geico attaches examples of such EOBs to its counterclaim (Doc. # 51-2). This sufficiently identifies "'the particular person to whom the remarks were made with a reasonable degree of certainty' to afford the [counterclaim-]defendant 'enough information to determine affirmative defenses.'" Ward v. Triple Canopy, Inc., No. 8:17-cv-802-SCB-MAP, 2017 WL 3149431, at *3 (M.D. Fla. July 25, 2017) (quoting Buckner v. Lower Fla. Keys Hosp. Dist., 403 So.2d 1025, 1027 (Fla. 3d DCA 1981)); see also Williamson v. Digit. Risk, LLC, No. 6:18-cv-767-GAP-TBS, 2018 WL 3870064, at *3 (M.D. Fla. Aug. 15, 2018) ("While the Plaintiff does not identify all of those to whom the allegedly defamatory statements were made, she does identify specific groups of people: members of Taylor's teams, Defendants' operations leaders, and the Plaintiff's former clients. Identifying specific groups of people to whom defamatory statements were published is

sufficient; a plaintiff is not required to identify every individual member of each group by name.").

## 2. **Injury to Trade or Profession**

Next, Geico argues that Count II fails to plausibly allege that the statements in the EOBs tended to injure Advanced Diagnostic's trade or profession. (Doc. # 54 at 15). Yet, a person reading the EOB could reasonably understand it to implicate Advanced Diagnostic's ability to conduct its business – that is, lawfully operate a clinic in Florida. Indeed, the EOB specifically stated that Advanced Diagnostic is not in compliance with the Florida Health Care Clinic Act. (Doc. # 51 at ¶ 66). Thus, if this statement is false, Advanced Diagnostic has sufficiently alleged the statement tends to injure its trade or profession. See Mackroy-Snell v. Lake Wales Charter Schs., No. 8:06-cv-1380-JSM-MAP, 2006 WL 2864317, at *6 (M.D. Fla. Oct. 5, 2006) ("Plaintiff has alleged that LWCS board members stated publicly that 'Plaintiff was terminated for poor job performance', when in fact Plaintiff had performed all requisite job duties properly and effectively. If proven, such statement could be injurious to Plaintiff's trade or profession. Of course, this is a fact that must be proven. This issue is more appropriately addressed at the summary judgment stage.").

### 3. Qualified Privilege

Last, Geico argues that "the statements in the EOBs are subject to a qualified privilege" and Advanced Diagnostic has not pled express malice. (Doc. # 54 at 16). Advanced Diagnostic responds that this privilege determination is inappropriate at this stage, and that it has sufficiently pled bad faith and improper means. (Doc. # 56 at 11-14).

"As a general rule, there is a presumption of malice where statements are defamatory per se." Shaw v. R.J. Reynolds Tobacco Co., 818 F. Supp. 1539, 1542 (M.D. Fla. 1993). However, "a qualified privilege exists for communications 'made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty . . . if made to a person having a corresponding interest or duty.'" Gills v. Armfield, No. 8:10-cv-895-JDW-TBM, 2011 WL 13175840, at *5 (M.D. Fla. Mar. 30, 2011) (quoting Nodar v. Galbreath, 462 So.2d 803, 809 (Fla. 1984)). In such cases, "the plaintiff then has the burden of rebutting a presumption of good faith." Shaw, 818 F. Supp. at 1542. "The elements of a qualified privilege include: (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and

(5) publication in a proper manner." Gills, 2011 WL 13175840, at *5. "Generally, immunity is an affirmative defense that should be pled by the party asserting it, and which may thereafter be considered after the facts are fleshed out by summary judgment or trial." Fariello v. Gavin, 873 So.2d 1243, 1245 (Fla. 5th DCA 2004).

Here, even assuming the statements in the EOBs are protected by a qualified privilege, the Court finds that Advanced Diagnostic has sufficiently alleged actual malice. The counterclaim avers that Geico intentionally and unjustifiably made these false statements and that Geico did so in bad faith to "avoid[] paying for medical benefits." (Doc. # 51 at ¶¶ 35, 55, 68). Taking these allegations as true and making all reasonable inferences in Advanced Diagnostic's favor, the Court finds this sufficient. The Court will be in a better position to determine privilege and malice at summary judgment. See Stewart Title Guar. Co. v. Title Dynamics, Inc., No. 2:04-cv-316-VMC-SPC, 2005 WL 2548419, at *5 (M.D. Fla. Oct. 11, 2005) ("Since Prince alleges malice in its complaint[,] . . . Prince reserves the ability to set forth facts which may overcome the economic interest privilege. Furthermore, the Court finds that the mere existence of a conceivably sustainable affirmative

16

defense . . . does not mandate the dismissal of a claim; rather, the claim should be permitted to advance to the next stage of litigation where the claim and the affirmative defenses may be fleshed out."). Therefore, the Motion is denied as to Count II.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs and Counterclaim-Defendants' Motion to Dismiss Counterclaims (Doc. # 54) is **GRANTED** in part and **DENIED** in part.

(2) Count I is **DISMISSED** without prejudice.

(3) Plaintiff and Counterclaim-Defendants' answers to the counterclaim (Doc. # 51) are due by **July 21, 2021.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 7th day of July, 2021.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE